KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND - # 221076
sragland@keker.com
CODY S. HARRIS - # 255302
charris@keker.com
CANDICE MAI KHANH NGUYEN - # 329881
cnguyen@keker.com
CARLOS C. MARTINEZ - # 354616
cmartinez@keker.com
LISA C. LU - # 364259
llu@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL - # 295602
priya@ccijustice.org
MARIEL VILLARREAL - # 317048
mariel@ccijustice.org
1999 Harrison Street #1800
Oakland, California 94612
Tel: (650) 762-8990

PRISON LAW OFFICE
MARGOT MENDELSON - # 268583
mmendelson@prisonlaw.com
TESS BORDEN - MJP # 805022
tess@prisonlaw.com
RANA ANABTAWI - # 267073
rana@prisonlaw.com
1917 Fifth Street
Berkeley, California 94710-1916
Tel.: (510) 280-2621

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN - # 278747
kvirgien@aclu.org
FELIPE HERNANDEZ - # 338468
npp_fhernandez@aclu.org
MARISOL DOMINGUEZ-RUIZ - # 345416
mdominguez-ruiz@aclu.org
425 California Street, 7th Floor
San Francisco, CA 94104
Tel.: (415) 343-0770

CARMEN IGUINA GONZALEZ - # 277369
ciguinagonzalez@aclu.org
915 15th Street, NW, 7th Floor
Washington, DC 20005
Tel.: (202) 393-4930

*Attorneys for Plaintiffs Fernando Gomez Ruiz, Fernando Viera Reyes, Jose Ruiz Canizales, Yuri Alexander Roque Campos, Sokhean Keo, Gustavo Guevara Alarcon, Alejandro Mendiola Escutia and all others similarly situated*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ; FERNANDO VIERA REYES; JOSE RUIZ CANIZALES; YURI ALEXANDER ROQUE CAMPOS; SOKHEAN KEO; GUSTAVO GUEVARA ALARCON; and ALEJANDRO MENDIOLA ESCUTIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; SERGIO ALBARRAN, Acting Director of San Francisco Field Office, Enforcement and Removal Operations, U.S. Immigration and | Case No. 1:26-cv-02546-JLT-CDB<br><br>**PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF RE MOTION TO INTERVENE AND MOTION TO STAY PENDING APPEAL**<br><br>Judge:    Hon. Jennifer L. Thurston<br><br>Date Filed: November 12, 2025<br>*(transferred from Northern District of California)*<br><br>Trial Date:  Not set |

6195928

Customs Enforcement; U.S. DEPARTMENT
OF HOMELAND SECURITY;
MARKWAYNE MULLIN, Secretary, U.S.
Department of Homeland Security,

Defendants.

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................8

BACKGROUND ........................................................................................................................10

ARGUMENT................................................................................................................................13

I.     THE COURT SHOULD DENY CORECIVIC'S MOTION TO INTERVENE FOR LIMITED PURPOSES...................................................................................13

    A.    CoreCivic fails to satisfy the Rule 24(a) factors for intervention as of right.........13

        1.    CoreCivic's motion is untimely. ................................................................14

        2.    CoreCivic has insufficiently identified an interest impaired by this action. ......................................................................................................17

        3.    Defendants adequately represent CoreCivic's alleged interests. ...............19

    B.    The Court should deny permissive intervention under Rule 24(b)........................19

II.    THE COURT SHOULD DENY CORECIVIC'S MOTION TO STAY. ..........................20

    A.    CoreCivic fails to show irreparable harm absent a stay........................................21

    B.    CoreCivic fails to make the requisite showing that its appeal is likely to succeed. .................................................................................................................24

        1.    CoreCivic fails to make the requisite showing with regard to constitutionally inadequate health care at California City. ........................24

        2.    CoreCivic fails to make the requisite showing with regard to constitutionally inadequate attorney access. .............................................28

        3.    The Court's preliminary injunction order complies with Rule 65.............28

        4.    The Court properly granted provisional class certification........................30

    C.    A stay would substantially injure class members and the public interest..............32

CONCLUSION.............................................................................................................................32

6195928

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agyeman v. I.N.S.*,
296 F.3d 871 (9th Cir. 2002) .......................................................................................................29

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ...........................................................................................9, 21, 22, 23

*Alaska v. Suburban Propane Gas Corp.*,
123 F.3d 1317 (9th Cir. 1997) .......................................................................................................17

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) ...................................................................................................31

*Arakaki v. Cayetano*,
324 F.3d 1078 (9th Cir. 2003), *as amended* (May 13, 2003) ...........................................14, 19

*Brown v. Google LLC*,
_ F.4th_, 2026 WL 1073276 (9th Cir. Apr. 20, 2026)..........................................13, 14, 16, 17

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*,
309 F.3d 1113 (9th Cir. 2002) .......................................................................................................15

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
42 F.4th 1013 (9th Cir. 2022) .......................................................................................................20

*Castro v. Cnty. of L.A.*,
833 F.3d 1060 (9th Cir. 2016) ...............................................................................................26, 27

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
137 F.4th 932 (9th Cir. 2025) .......................................................................................................22

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021) ...........................................................................................9, 21, 22

*Flores v. Bennett*,
675 F. Supp. 3d 1052 (E.D. Cal. 2023)..............................................................................9, 23

*Glob. K9 Prot. Grp., LLC v. United States*,
170 Fed. Cl. 523 (2024) .................................................................................................................19

*Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*,
739 F.2d 466 (9th Cir. 1984) .......................................................................................................23

*Gomez v. J. Jacobo Farm Lab. Contractor, Inc.*,
334 F.R.D. 234 (E.D. Cal. 2019) ...................................................................................................31

*Gordon v. Cnty. of Orange*,
    888 F.3d 1118 (9th Cir. 2018) ...............................................................................26, 27

*Guel v. Cnty. of San Bernardino*,
    2024 WL 5185331 (C.D. Cal. Oct. 23, 2024)........................................................26, 27

*Hadix v. Caruso*,
    465 F. Supp. 2d 776 (W.D. Mich. 2006), *amended on reconsideration*, 2007
    WL 162279 (W.D. Mich. Jan. 16, 2007) .................................................................29

*Handberry v. Thompson*,
    446 F.3d 335 (2d Cir. 2006)....................................................................................29

*Harris v. Bd. of Supervisors, L.A. Cnty.*,
    366 F.3d 754 (9th Cir. 2004) ...............................................................................9, 32

*Indep. Living Ctr. of S. Cal. v. City of L.A.*,
    2025 WL 1712398 (C.D. Cal. Mar. 31, 2025)..........................................................29

*United States ex rel. Killingsworth v. Northrop Corp.*,
    25 F.3d 715 (9th Cir. 1994) ...................................................................................17

*Laube v. Campbell*,
    333 F. Supp. 2d 1234 (M.D. Ala. 2004) .................................................................29

*League of United Latin Am. Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997) ...........................................................................17, 20

*Lee v. Pep Boys-Manny Moe & Jack of Cal.*,
    2016 WL 324015 (N.D. Cal. Jan. 27, 2016)............................................................17

*McDonald v. Means*,
    309 F.3d 530 (9th Cir. 2002) ..................................................................................20

*Melendres v. Skinner*,
    113 F.4th 1126 (9th Cir. 2024) ...............................................................................29

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    722 F. App'x 644 (9th Cir. 2018) ...........................................................................20

*Nat'l Org. For the Reform of Marijuana L. v. Mullen*,
    828 F.2d 536 (9th Cir. 1987) ..................................................................................29

*Nken v. Holder*,
    556 U.S. 418 (2009)......................................................................................21, 24, 32

*Orange Cnty. v. Air Cal.*,
    799 F.2d 535 (9th Cir. 1986) ..................................................................................14

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

*Pablo Sequen v. Albarran*,
    810 F. Supp. 3d 1084 (N.D. Cal. 2025) ...................................................................21

*Parsons v. Ryan*,
    912 F.3d 486 (9th Cir. 2018) ...................................................................................28

*Perry v. Proposition 8 Off. Proponents*,
    587 F.3d 947 (9th Cir. 2009) ............................................................................14, 19

*Plata v. Schwarzenegger*,
    603 F.3d 1088 (9th Cir. 2010) .................................................................................29

*Playmakers LLC v. ESPN, Inc.*,
    376 F.3d 894 (9th Cir. 2004) .........................................................................9, 27, 28

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010), *abrogated on other grounds as recognized by*
    *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) .....................................31

*Roe v. Critchfield*,
    137 F.4th 921 (9th Cir. 2025) ..................................................................................32

*S.F. Baykeeper v. U.S. Fish & Wildlife Serv.*,
    2021 WL 3426961 (N.D. Cal. Aug. 5, 2021) ...........................................................17

*Sampson v. Murray*,
    415 U.S. 61 (1974)...................................................................................................22

*Sandoval v. Cnty. of San Diego*,
    985 F.3d 657 (9th Cir. 2021) ...................................................................................27

*Spangler v. Pasadena City Bd. of Educ.*,
    552 F.2d 1326 (9th Cir. 1977) .................................................................................20

*Toussaint v. Rushen*,
    553 F. Supp. 1365 (N.D. Cal. 1983), *aff'd in part sub nom. Toussaint v.*
    *Yockey*, 722 F.2d 1490 (9th Cir. 1984) ...................................................................21

*Turner v. Safley*,
    482 U.S. 78 (1987)...................................................................................................28

*Vasquez Perdomo v. Noem*,
    148 F.4th 656 (9th Cir. 2025) ..................................................................................21

*Williams v. CoreCivic of Tenn., LLC*,
    2026 WL 323971 (6th Cir. Feb. 6, 2026) ...............................................................18

*Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*,
    695 F.3d 1310 (Fed. Cir. 2012)................................................................................19

6

*Youngberg v. Romeo*,
    457 U.S. 307 (1982)......................................................................................................28

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)......................................................................................................28

**Federal Statutes**

18 U.S.C. § 3626...............................................................................................................29

**Rules**

Fed. R. Civ. P. 1...............................................................................................................16

Fed. R. Civ. P. 23.......................................................................................................30, 31

Fed. R. Civ. P. 24................................................................................................... *passim*

Fed. R. Civ. P. 65.......................................................................................................28, 30

**Other Authorities**

Ko Lyn Cheang, *Sen. Padilla Opens Inquiry into Condition of Ill Refugee at
    California's Largest ICE Detention Center,* S.F. CHRON. May 1, 2026,
    https://www.sfchronicle.com/ california/article/inquiry-into-medical-care-ice-
    detention-facility-22235407.php..................................................................................24

Ko Lyn Cheang, *'Waiting for Him to Die:' ICE Detainee's Sister Raises Alarm
    about Medical Neglect at California Facility,* S.F. CHRON., April 15, 2026,
    https://www.sfchronicle.com/california/article/ ice-california-city-medical-
    crisis-22203807.php......................................................................................................24

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

# INTRODUCTION[1]

Nonparty CoreCivic is a private, for-profit prison corporation that, after months of delay, now seeks to intervene in this case for the sole purpose of halting the progress made by the parties and the court-appointed medical monitor to provide for the health and safety of more than 1,600 individuals housed at California City Detention Facility ("California City"). Defendants, who are ultimately responsible for the facility and for the well-being of the people detained there, have been working with Plaintiffs—and CoreCivic—to implement the Court's preliminary injunction and monitor appointment orders. CoreCivic provides no reason, and no evidentiary support, that justifies upending that status quo. The Court should deny CoreCivic's motions.

As an initial matter, CoreCivic's motion to intervene fails because it is untimely and because Defendants are adequately representing whatever interests CoreCivic has in this action. CoreCivic nowhere disputes that it was aware of this lawsuit—including the relief Plaintiffs seek and the impact that relief might have on its operations—since Plaintiffs filed their complaint in November 2025. Quite the opposite: CoreCivic has been working hand-in-glove with Defendants in defending the action and opposing relief. Indeed, CoreCivic's facility Warden and Regional Medical Director both submitted sworn declarations in support of Defendants' brief opposing Plaintiffs' preliminary injunction motion, and Defendants have been keeping CoreCivic abreast of case-related developments—even taking CoreCivic's lead in some respects. Meanwhile, CoreCivic all but concedes that it made the calculated decision to remain on the sidelines to wait and see how things turned out before moving to intervene. Indeed, it seeks intervention at this late stage solely for the limited purpose of disrupting court-ordered relief. The Court should not reward this gamesmanship by permitting nonparties to expend scarce judicial time and resources relitigating decided issues merely because they are unhappy with the outcome. Because CoreCivic cannot satisfy Rule 24's requirements for mandatory intervention or the discretionary standard for permissive intervention, the Court should deny its motion to intervene.

If the Court were to grant CoreCivic's motion for limited intervention, however, the Court

---

[1] In all quotations, all internal quotation marks, citations, alterations, and the like have been omitted, and all emphases added, unless otherwise noted. "Rule" means Federal Rule of Civil Procedure.

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

should deny CoreCivic's motion to stay the preliminary injunction and monitor orders. CoreCivic falls far short of meeting its burden to justify a stay. To start, Defendants (and CoreCivic) have already taken steps to implement the court-ordered relief, which itself undercuts a finding of irreparable harm. *See Flores v. Bennett*, 675 F. Supp. 3d 1052, 1058 (E.D. Cal. 2023) (denying a motion to stay where, in light of Defendants' conduct, it was "not readily apparent how they may suffer irreparable harm by maintaining the status quo under the preliminary injunction"). Additionally, CoreCivic has provided no evidence that it has suffered actual harm due to the orders, or that it is likely to suffer any cognizable irreparable harm absent a stay. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (refusing to stay an injunction for lack of adequate evidentiary showing). Rather, the primary harm CoreCivic articulates is economic, which is not irreparable as a matter of law. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021). In stark contrast, as the Court has already found based on extensive evidence, it is *Plaintiffs* who have demonstrated that they have suffered and will continue to suffer severe and potentially irreversible and life-threatening medical harm while detained at California City. Under the law, "avoiding preventable human suffering outweighs any administrative or financial concerns that Defendants may have." Doc. 111 (Memorandum of Decision, or "MOD") at 13; *see also Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004).

Even if the Court were to find (despite the lack of evidence) that CoreCivic will suffer irreparable harm without a stay, the Court should still deny the stay motion because CoreCivic has failed to meet its burden to show that it is likely to prevail on the merits of its appeal. Unable to avoid the Court's thorough factual findings and legal conclusions as set forth in its MOD, CoreCivic argues that the Court improperly granted the preliminary injunction and relied on erroneous legal standards, largely pointing to purported inconsistencies between oral snippets from the full-day PI hearing and the MOD. But the law is clear: subsequently-issued written opinions supersede prior oral statements made from the bench. *See Playmakers LLC v. ESPN, Inc.*, 376 F.3d 894 (9th Cir. 2004). Because the Court carefully considered voluminous briefing and a fulsome evidentiary record, conducted a full-day hearing, and issued a ruling supported by a robust written opinion that lays out factual findings and the applicable law, CoreCivic's argument fails.

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

The court orders at issue are modest judicial attempts to provide much-needed relief at a facility that state officials, federal representatives, nonprofit agencies, and numerous media outlets have all reported fails to provide adequate medical care to the thousands of people who are or will be housed there. Defendants—who are responsible for conditions and who direct CoreCivic, their contractor, to handle day-to-day operations—are presently taking steps to implement the Court's orders in coordination with CoreCivic. There is no reason to halt this carefully crafted, well-supported, and ongoing relief based on a third-party's conclusory protestations of economic harm.

## BACKGROUND

This action arises from ongoing constitutional and statutory violations at California City, a remote former state prison in the Mojave Desert that began housing civil immigration detainees for the federal government in August 2025. For-profit prison corporation CoreCivic operates California City pursuant to a contract with ICE, with ICE retaining ultimate legal and constitutional responsibility for the treatment and conditions of confinement of individuals in their custody. *See* Doc. 43-1 ("Landin Decl.") ¶¶ 12–13. Plaintiffs filed this action on November 12, 2025, against ICE and the Department of Homeland Security, the agencies ultimately responsible for conditions of confinement in immigration detention facilities. The complaint alleges constitutional and statutory violations arising from conditions at California City. Doc. 1. The complaint referenced CoreCivic on the first page. *See id.* ¶ 3.

On December 1, 2025, Plaintiffs moved for class certification and a preliminary injunction. Docs. 21–22. Plaintiffs sought facility-wide relief related to medical care, attorney access, freedom of movement, and other conditions of confinement. Doc. 22. Among other relief, Plaintiffs requested the provision of temperature-appropriate clothing, enhanced attorney access, and the appointment of an independent monitor, with access to the facility, records, staff, and patients, to ensure the provision of constitutionally adequate medical care. Doc. 22-38. In opposing the motion, Defendants relied entirely on declarations from CoreCivic employees, specifically Warden Christopher Chestnut and Regional Medical Director Dr. Susan Tiona, both of whom described the facility's policies and procedures. Docs. 40-6, 40-7. Warden Chestnut later filed a "corrected" declaration that contained additional information about CoreCivic's operations. Doc. 45-1.

6195928

On February 10, 2026, after a lengthy February 6 hearing, the Court entered an order granting in part Plaintiffs' motion for preliminary injunction and provisionally certifying a class. Doc. 72 ("PI Order"). In relevant part, the PI Order directed Defendants to ensure constitutionally adequate health care and attorney access, and it called for the appointment of a monitor to oversee implementation of the required medical relief. *Id.* The PI Order comprises a subset of the relief Plaintiffs had proposed. *See* Docs. 22-38, 72. Three weeks later, CoreCivic filed "emergency" motions to intervene and stay the PI Order pending appeal. Docs. 82, 86.

On March 27, 2026, the Court issued its MOD setting forth the reasons for its ruling. Doc. 111. The Court cited its February 10 Order, the lengthy hearing on February 6, and the extensive briefing regarding: the PI (including dozens of declarations from individuals held at California City, CoreCivic employees, two Plaintiff experts, and numerous legal professionals); Plaintiffs' Motion for Class Certification; and Plaintiffs' Notice of Noncompliance with a December 2025 Court Order regarding Plaintiffs' motion for emergency relief through a TRO concerning two Named Plaintiffs who were at immediate risk of serious harm or death. In its fulsome review of the record evidence, the Court credited in particular Plaintiffs' medical expert Dr. Todd Wilcox—whose expertise and decades of experience as a medical doctor at correctional facilities remain undisputed—and his ultimate conclusion that in light of systemic deficiencies in the health care system at California City, and CoreCivic's own medical records revealing adverse patient outcomes, "it is not safe to be sick" at California City. MOD at 5.

On March 30, 2026, having "found evidence of systemwide failures in Defendants' delivery of health care services at California City Detention Facility in the areas of health care staffing, intake procedures and assessments, access to medical specialists and emergency services, continuity of care, access to prescribed medications, and the 'sick call' system," the Court selected a monitor for a term of 120 days subject to renewal. Doc. 112 ("Monitor Order") at 1–2. Among other things, that order required that Defendants grant the monitor access to California City's electronic health record system and provide documents regarding health care policies and procedures, patient lists, sick call requests and health care grievances, and "any other documents or information the External Monitor determines in his expertise he needs to assess compliance." *Id.*

6195928

at 3. The order further provides for a three-day, in-person inspection, available on one week's notice. *Id.* The monitor sent his first set of document requests on March 31. Defendants began producing responsive documents the next week. Decl. of Tess Borden ("Borden Decl.") ¶ 8.

For the past month, the parties have taken steps to implement the Court's orders. The parties and monitor have corresponded multiple times a week via email, scheduled regular meetings via Zoom, coordinated access to CoreCivic's electronic health records system, produced thousands of pages of documents in response to the monitor's requests, and discussed specific patients of concern. *Id.* ¶¶ 4–5, 7, 9–12. In accordance with the PI Order, attorneys have begun holding contact visits with their clients, which has substantially enhanced the clients' access to counsel. *Id.* ¶ 16.[2]

Meanwhile, in a separate order also issued on March 30, 2026, the Court transferred the case to the Eastern District. Doc. 113. Recognizing that the Northern District's MOD had rendered the existing briefs "stale," this Court ordered the parties to re-brief the motion in light of the full record. Doc. 120. Shortly thereafter, on April 13, Defendants filed a notice of appeal. Doc. 127. Because Defendants' appeal affected, and perhaps mooted, CoreCivic's motions, the Court denied CoreCivic's intervention motion without prejudice, held the stay motion in abeyance, and asked for a status report. Doc. 131. Defendants thereafter stated that the appeal was "protective," and that they were still considering whether to move to stay the Court's orders. Doc. 132. CoreCivic argued that Defendants' position weighed in favor of CoreCivic's motion to intervene and stay and claimed that the monitor's upcoming site-visit would irreparably harm CoreCivic's interests. *Id.* at 2–3. Plaintiffs argued that it made little sense for the Court to adjudicate a motion that could be rendered moot depending on the government's ultimate decision. *Id.* at 2.

The Court ordered the parties and CoreCivic to meet and confer and propose a briefing schedule for CoreCivic's motions. Doc. 133. In so ruling, the Court credited Plaintiffs' "legitimate concerns about the prejudice that may flow from CoreCivic's delayed full engagement in issues that were thoroughly briefed and presented to Judge Chesney from late December 2025 through early February 2026." *Id.* The Court also questioned why, if CoreCivic was supposedly concerned

---

[2] Other aspects of the PI Order remain at issue, however. In violation of that order, Defendants have refused to provide temperature-appropriate clothing to detained individuals, claiming that thin windbreakers are sufficient despite unrebutted evidence to the contrary. *See* MOD at 12.

about the lawsuit's effect on its operations, it was requesting only intervention "for the limited purposes of appeal and to file a motion to stay pending the appeal," rather than improving its "access to ongoing or future proceedings." *Id.* The Court ordered CoreCivic to re-brief its motions, "address the full scope of any proposed intervention," and "address with specificity why it was unable to present to Judge Chesney all material information, including information included in the March 3, 2026 Declaration of Christopher Chestnut." *Id.*

On April 23, 2026, the parties and CoreCivic filed a joint submission with competing briefing schedules. Doc. 134. Because by then the monitor had told Defendants (and Defendants had told CoreCivic) that he intended to visit California City on May 4-6, CoreCivic proposed an impossibly "truncated" briefing schedule. *Id.* But before the Court could rule, Defendants asked the monitor, at CoreCivic's request, to delay his visit to the week of May 11. Borden Decl. ¶ 14. Plaintiffs alerted the Court, Doc. 137, and the Court directed the parties to work with the monitor to reschedule his visit to no earlier than May 18. Doc. 138. Defendants' counsel told the monitor that CoreCivic had confirmed "that the week of May 18 works for the facility." Borden Decl. ¶ 14.

CoreCivic submitted its new brief on April 23. Doc. 135 ("Br."). It confirms that CoreCivic is still seeking intervention only for the "limited purposes" of appealing the relevant orders and moving to stay them pending appeal. *Id.* at 1.

## ARGUMENT

### I.     The Court should deny CoreCivic's motion to intervene for limited purposes.

After watching this litigation unfold for months, CoreCivic filed a belated motion to intervene that is an inefficient and prejudicial attempt to relitigate vital relief necessary to protect health and safety. CoreCivic's new brief makes this inefficiency doubly clear: it disclaims any effort to intervene as a party in full and instead seeks to intervene only for the "limited purposes" of disrupting the already-issued preliminary injunctive relief and halting the monitor's visit. This motion is a waste of the Court's time and is simply "too little too late." *Brown v. Google LLC*, _ F.4th_, 2026 WL 1073276, at *1 (9th Cir. Apr. 20, 2026) (denying intervention).

#### A.     CoreCivic fails to satisfy the Rule 24(a) factors for intervention as of right.

A party seeking to intervene as of right must demonstrate that its motion was timely, that it

has significantly protectable interests that will be harmed, and that its interests are inadequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *as amended* (May 13, 2003). "Failure to satisfy any one of the [Rule 24(a)] requirements is fatal." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

### 1. CoreCivic's motion is untimely.

This Court has already recognized that "CoreCivic [has] delayed full engagement in issues that were thoroughly briefed and presented . . . from December 2025 through early February 2026." Doc. 133. That delay is unjustified, prejudicial, and comes after the Court has expended significant resources considering Plaintiffs' requested relief. *See Brown*, 2026 WL 1073276, at *3 (setting forth a "three-part" test for timeliness).

*First*, CoreCivic's motion is belated, and CoreCivic fails to convincingly explain its delay. As the Ninth Circuit has explained, a proposed intervenor must act as soon as it "knows or has reason to know that his interests *might* be adversely affected by the outcome of the litigation," with the delay "measured from the date the proposed intervenor *should have been aware* that its interests would no longer be protected adequately by the parties." *Brown*, 2026 WL 1073276, at *6. Additionally, a proposed intervenor must "convincingly explain" any delay. *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 538 (9th Cir. 1986). CoreCivic has done neither. It chose to remain on the sidelines, even though the potential effects of this litigation on its alleged interests were readily apparent from the outset. *See* Doc. 106 at 12–16. Plaintiffs' requested relief was abundantly clear from the moment Plaintiffs filed their complaint on November 12, 2025, and CoreCivic was further apprised of how this litigation could affect its purported interests throughout the preliminary injunction and TRO briefing, hearings, and extended negotiations. Yet CoreCivic stood pat. It is no matter that CoreCivic was unsure that Defendants would appeal or seek a stay (in fact, the parties remain unsure); it is enough that CoreCivic knew their interests might diverge. As the Ninth Circuit recently put it, "the appropriate time to move for intervention would have been when they were on notice that their interests *might* be adversely affected by the outcome of the litigation—not when they could be certain of harm." *Brown*, 2026 WL 1073276, at *6 (emphasis in original).

Feigning surprise, CoreCivic argues that its "hand was . . . forced" by the issuance of the

14

preliminary injunction appointing a monitor. Br. at 7–8. That argument rings hollow. Four months earlier, Plaintiffs' preliminary injunction motion had expressly proposed the appointment of a monitor for medical care. Doc. 22-38. And the parties' papers vigorously debated the merits of that relief for months before CoreCivic sought to intervene. Docs. 22, 38, 49. Indeed, the government's primary evidence came in the form of declarations from CoreCivic employees. CoreCivic's claim that it was somehow surprised that the Court decided the preliminary injunction motion at a hearing set, in part, to decide the preliminary injunction motion defies common sense.

To the extent that CoreCivic has claimed late-breaking divergent "contractual and due process interests" from the government based on their (undisclosed) contract, Doc. 82 at 12–13, any financial disjuncture was readily apparent from the start of the litigation. Although CoreCivic claims that Defendants only recently failed to represent its interests by not moving to stay the PI Order on CoreCivic's preferred timeline, the procedural history undermines CoreCivic's reasoning. For example, Defendants stipulated to an order resolving Plaintiffs' request for a TRO in December 2025, Doc. 36, yet CoreCivic did nothing to intervene to protect its alleged operational or financial interests at that point either. At bottom, CoreCivic "could have intervened sooner to protect [itself]" and "should have known that the risks of waiting included possible denial of [its] motion[] to intervene as untimely." *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002).

Tellingly, CoreCivic now backtracks from Warden Chestnut's March 3 declaration, which claimed that "the Court did not have the benefit of [his] perspective on the current status of medical care, recreation, or access to counsel at Cal City when granting the relief requested by Plaintiffs." Doc. 82-1 ¶ 7. Of course the Court did: Warden Chestnut filed both an initial declaration and a corrected one as part of Defendants' preliminary injunction opposition two months earlier. Docs. 38, 45. Indeed, from Defendants' first briefs in this case, Warden Chestnut's and other CoreCivic employees' perspectives were front and center. *See* Doc. 133 (noting that CoreCivic employee declarations were "discussed extensively at the February 6, 2026 hearing"). Instead, CoreCivic now "clarifies" that the information set forth in his March 3 declaration was directly responsive to questions posed at the February 6, 2026 hearing, demonstrated the impairment of CoreCivic's

6195928

interests in the preliminary injunction, or supposedly indicated post-briefing operational changes. Br. at 8. But nothing prevented CoreCivic from presenting this information earlier. For example, Warden Chestnut's March 3 declaration discusses ICE's National Detention Standards, Doc. 82-1 ¶¶ 17–40, but those were well known and repeatedly cited in Defendants' opposition brief, *see* Doc. 40-4, as well as in Warden Chestnut's initial declaration, Doc. 40-6 ¶¶ 78, 110, and by CoreCivic's other declarant, Dr. Tiona. *See* Doc. 40-7 ¶¶ 19, 29–30. Similarly, the requested injunction's potential effects on CoreCivic's operations were no mystery; Plaintiffs' December 1, 2025 proposed order informed CoreCivic that the Court could order increased medical staffing, attorney access, and outdoor recreation, making any resulting costs foreseeable. Doc. 22-38. Nor is it true that the March 3 declaration served as an update regarding conditions at California City—the declaration itself purports to describe "significant changes and improvements at Cal City *in the six months since it reopened*" as an immigration detention facility, not just the period between his January 15 and March 3 declarations. Doc. 82-1 ¶ 8. Warden Chestnut's March 3 declaration was an attempted do-over, nothing more.

**Second**, CoreCivic's belated engagement in this litigation has prejudiced Plaintiffs. Had CoreCivic engaged in this litigation before the preliminary injunction proceedings, it could have raised its concerns before the parties and the Court expended significant resources briefing, arguing, and considering the scope of relief. Thus, "[t]his is not a case of merely prolonging the litigation or making resolution more difficult—it is a case of upending the resolution" just as the parties were working to implement the Court's PI Order. *Brown*, 2026 WL 1073276, at *5. CoreCivic views this inefficiency as a feature, not a bug. CoreCivic claims that because "this Court has proven highly responsive in this and other cases," the parties should now re-present already decided issues to this Court. Br. at 10. Such re-litigation is inefficient, wasteful of scarce judicial resources, and violates the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1 (explaining the Federal Rules aim to "secure the just, speedy, and inexpensive determination of every action and proceeding").

**Third**, CoreCivic's motion comes after significant proceedings in this case. Although CoreCivic claims that this case "remains in its infancy," Br. at 7, the preliminary injunction that CoreCivic challenges had already fully matured *before* CoreCivic moved to intervene. Again,

16

CoreCivic makes no request to participate in the litigation going forward, rendering CoreCivic's references to future procedural deadlines a red herring. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) (explaining the factor requires a "pragmatic approach" based on "what ha[s] already occurred," rather than "what ha[s] not yet occurred"). Here, in light of the Court's substantive engagement in the preliminary injunction proceedings, CoreCivic's after-the-fact intervention—solely to contest events that the Court has already decided—comes after "a lot of water had already passed underneath [the] litigation bridge." *Id.*

*Finally*, CoreCivic is incorrect that its motion to intervene is timely because it filed the motion before the deadline to appeal had elapsed. Br. at 6. When deciding timeliness, courts *always* consider Rule 24's timeliness factors. Indeed, in *Killingsworth*, CoreCivic's cited authority, the Ninth Circuit still "require[d] an acceptable reason for the delay in filing the motion" and assessed the prejudice to the existing parties. *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994). Seeking to evade this requirement, CoreCivic misleadingly cites *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317 (9th Cir. 1997), for the proposition that "so long as the motion to intervene is filed within the time within which [a party] could have taken an appeal, the motion is timely as a matter of law." Br. at 6. The Ninth Circuit rejected a similar argument just last month, refusing to supplant "our circuit's three-part timeliness test" with a "bright-line rule" that would render an intervention motion timely so long as "it was filed within the time that the named plaintiffs could have appealed the final judgment." *Brown*, 2026 WL 1073276, at *4. The same reasoning applies here. CoreCivic cannot sit on the sidelines with full knowledge of the case, wait for an adverse ruling, and then invoke the appellate clock to excuse its earlier delay. "Ultimately, the timeliness inquiry requires the Court to consider all of the circumstances." *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 2016 WL 324015, at *8 (N.D. Cal. Jan. 27, 2016). These circumstances counsel strongly against intervention.

### 2. CoreCivic has insufficiently identified an interest impaired by this action.

While the preliminary injunction may affect CoreCivic's interests in a general sense, CoreCivic has failed to establish that such effects will be "harmful." *S.F. Baykeeper v. U.S. Fish & Wildlife Serv.*, 2021 WL 3426961, at *6 (N.D. Cal. Aug. 5, 2021) (proposed intervenor must show

"the injunctive relief sought by the plaintiffs will have [] direct, immediate, and harmful effects upon . . . legally protectable interests"). To start, because CoreCivic has failed to disclose its agreement with ICE with respect to California City, neither the Court nor Plaintiffs have any way to evaluate CoreCivic's contractual rights, duties, and alleged liabilities. CoreCivic's references to legal interests adversely affected by the PI Order amount to unsupported and conclusory speculation, and Plaintiffs, and the Court, have no way to test CoreCivic's assertions of potential economic harm without access to the contract and its relevant terms.

Next, it is crucial to remember that CoreCivic is a federal contractor. The government is the principal and CoreCivic is the agent, not the other way around. CoreCivic must have known, when it contracted with the government to detain people at California City, that it is not above the law and was required to detain them in constitutional conditions, and that it might be subject to court orders if it failed to do so. The law on this point is crystal clear and has been applied to CoreCivic itself. *See, e.g.*, *Williams v. CoreCivic of Tenn., LLC*, 2026 WL 323971, at *3 (6th Cir. Feb. 6, 2026) (applying constitutional standards to "private corporations that perform traditional state functions such as run a prison"). Yet CoreCivic seems to suggest that it has a contractual interest in not being bound by the constitution or by court order—or that it cannot comply with its contract terms if it is so bound. Those arguments must fail.

What's more, CoreCivic's conduct belies its argument that following Defendants' directives to comply with the Court's orders harms its interests. CoreCivic is working with Defendants to implement the Court's orders and has identified no actual evidence of harm to its interests from doing so. *See infra* Part II.A. Through Defendants, CoreCivic has produced documents to the monitor, has had multiple *ex parte* communications with him regarding electronic medical record access, has identified preferred dates for his site visit, and has modified its facility to allow confidential attorney visits. Borden Decl. ¶¶ 7–9, 14–16. CoreCivic nowhere explains why it must intervene now, after all this water under the bridge. It can hardly claim harm from a three-day visit from a single doctor, when CoreCivic and ICE have already hosted inspections from two U.S. Senators, a U.S. Representative, a team from the California Attorney General's office, and California's authorized protection and advocacy organization. *See* Doc. 49-2 ¶¶ 24–26.

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

CoreCivic's remaining arguments regarding its alleged due process rights fail. CoreCivic again attempts to present the preliminary injunction hearing as a departure from Plaintiffs' December 1, 2025 proposed order. But every bit of what the Court ordered, including the monitor's expected role and functions, appeared in Plaintiffs' proposed order—the Court awarded Plaintiffs *less* relief than they sought, not more. *Compare* Docs. 72 and 112 *with* Doc. 22-38 at 6. And to the extent that CoreCivic continues to press its argument that the monitor's visit would violate its alleged "right to counsel," *see* Doc. 134 at 2, the Court should reject it. That argument nowhere appears in CoreCivic's brief and is therefore waived. But in any event, as Plaintiffs previously noted, CoreCivic neither cited any law supporting its assertion, *id.* at 3 n.2, nor explained what harm would flow from the monitor visiting the facility and talking to staff. Regardless, to address CoreCivic's purported concern, Plaintiffs offered to stipulate to all counsel's presence during the inspection, including CoreCivic's—an offer CoreCivic ignored. *See* Borden Decl. ¶ 15.

### 3.  Defendants adequately represent CoreCivic's alleged interests.

Because CoreCivic and the government "have the same ultimate objective" to defend their operation of California City, "a presumption of adequacy of representation arises." *Arakaki*, 324 F.3d at 1086. CoreCivic fails to make the required "compelling showing" to overcome that presumption. *Id.* That presumption is even stronger when the government is the party at issue. *See Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1317 (Fed. Cir. 2012) (describing "the presumption that the government as sovereign can adequately represent [the intervenor's] interests"); *Glob. K9 Prot. Grp., LLC v. United States*, 170 Fed. Cl. 523, 555 (2024) (finding that the postal service adequately represented the interests of a contractor in a bid contest action). Moreover, to the extent CoreCivic argues that Defendants are *unwilling* to defend CoreCivic's interests by moving to stay and appealing injunctive relief, that divergence became apparent—at the very least—following the TRO proceedings in December 2025.

In sum, CoreCivic has failed to satisfy all three of Rule 24(a)'s requirements, and one such failure suffices. *Perry*, 587 F.3d at 950. The Court should deny intervention as of right.

### B.    The Court should deny permissive intervention under Rule 24(b).

CoreCivic fares no better under Rule 24(b)'s permissive intervention standard. The Court

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

should utilize its "broad discretion" to deny CoreCivic's motion. *McDonald v. Means*, 309 F.3d 530, 541 (9th Cir. 2002); *see also Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (listing additional discretionary factors courts may consider).

To begin, the timeliness requirement for permissive intervention is analyzed "more strictly" than it is for intervention as a matter of right. *League of United Latin Am. Citizens*, 131 F.3d at 1308. Because CoreCivic's motion fails the timeliness requirement for intervention as of right, it also fails under the more demanding standard for permissive intervention. *See supra* Part I.A.1.

CoreCivic also ignores the discretionary *Spangler* factors, which guide the permissive intervention analysis. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). And here, several factors weigh against permissive intervention: CoreCivic's participation will unduly delay vital relief; CoreCivic has contributed to the factual record for the preliminary injunction proceedings already; Defendants are presumed to adequately represent CoreCivic's interests; and CoreCivic has disclaimed any desire to further participate in the future of this action—making its addition to these proceedings wholly counterproductive, with no added efficiency benefit for future discovery.

Finally, this Court should consider the irreparable harm that the PI Order seeks to prevent, discussed more fully below. *See Mineworkers' Pension Scheme v. First Solar Inc.*, 722 F. App'x 644, 646 (9th Cir. 2018) ("Courts are free to consider other factors in their analysis."). Allowing non-party CoreCivic to engage belatedly and solely to roadblock potentially life-saving relief would thwart the interests of justice. The Court should deny CoreCivic's intervention request.

## II.    The Court should deny CoreCivic's motion to stay.

Even if the Court were to allow CoreCivic to intervene for the limited purposes it seeks, the Court should leave the status quo in place and deny CoreCivic's motion to stay. Staying the Court's orders would upend the progress that the parties and monitor have made to date. And it would place the 1,600 people held in California City at serious risk of continued harm, without even the modest judicial relief they have secured. CoreCivic claims that all is well at the facility, but nothing could be further from the truth. Conditions at California City are dire, and an independent monitor's report to the Court is hardly an irreparable harm that justifies undoing an injunction as thoroughly

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

grounded in fact and law as this one.

Asking a court to stay a preliminary injunction pending appeal is an "extraordinary request," *E. Bay Sanctuary,* 993 F.3d at 661, which "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). Instead, it is "an exercise of judicial discretion and the propriety of its issue is dependent on the circumstances of the particular case." *Id.* "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34. Courts consider the four *Nken* factors in deciding whether to grant a stay pending appeal. *See Vasquez Perdomo v. Noem*, 148 F.4th 656, 678 (9th Cir. 2025). They are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434. Because CoreCivic has neither provided any actual evidence of irreparable harm it would suffer absent a stay nor shown that it is likely to prevail on the merits of its appeal, and because the harm to class members and the public interest would be substantial, the Court should deny CoreCivic's motion to stay.

### A. CoreCivic fails to show irreparable harm absent a stay.

CoreCivic fails to meet its burden to show that it will likely suffer irreparable harm absent a stay. As the Ninth Circuit has held, "[t]he minimum threshold showing for a stay pending appeal requires that irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado*, 952 F.3d at 1007. Yet CoreCivic devotes just two short paragraphs to this dispositive factor. Br. at 22. None of CoreCivic's cursory arguments have merit.

***First***, CoreCivic argues that the injunction harms it by being too "vague," using words like "thorough" and "timely." *Id.* Even if vagueness could be considered irreparable harm for purposes of a stay motion (and CoreCivic cites no law to that effect), the argument is nonsense: courts often use such phrases when crafting an injunction rather than attempting to micromanage a facility's medical system. *See, e.g.*, *Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1134 (N.D. Cal. 2025) (ordering ICE to "[p]rovide prompt access to medical care when requested," and using terms such as "sufficient," "adequate" and "thorough" to describe required actions); *Toussaint v. Rushen*, 553

21

F. Supp. 1365, 1385 (N.D. Cal. 1983), *aff'd in part sub nom. Toussaint v. Yockey*, 722 F.2d 1490 (9th Cir. 1984) (ordering defendants to "provide adequate and competent medical, surgical, psychiatric and dental services" and to "maintain adequate facilities and staff for such service").

**Second**, CoreCivic points to economic impacts that fail to constitute irreparable harm. *See E. Bay Sanctuary*, 993 F.3d at 677 ("[E]conomic harm is not generally considered irreparable."); *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). Similarly, "diversion" of "time, resources, and personnel from other pressing . . . priorities" constitutes "minimal evidence of harm" to the complaining party. *Al Otro Lado*, 952 F.3d at 1008. Yet those are the only harms that CoreCivic alludes to. CoreCivic argues that the PI will force CoreCivic "to expend significant time and resources to comply with the preliminary injunction" and that CoreCivic must "divert staff and legal resources to gather information in response to the monitor's questions and requests." Br. at 22; *see also* Doc. 82-1 ¶¶ 47–49, 65–66, 74–75. Such effects are insufficient to justify a stay.

**Third**, even if such economic and administrative harms could be said to warrant a stay, CoreCivic has provided no actual evidence that any of these harms have or will come to pass. The law requires such a showing. *See Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 942 (9th Cir. 2025) (denying a motion to stay where the government had waited "nearly a week to file this emergency motion to stay the preliminary injunction," and yet "provide[d] no evidence to support its claims of irreparable injury"). At most, CoreCivic relies on Warden Chestnut's March 3 declaration. Doc. 82-1. That declaration, however, provides no actual evidence of irreparable harm. Instead, it references estimated *projected costs* that CoreCivic *might* incur in complying with the PI Order. *See id.* ¶¶ 47–49, 65–66. As the Ninth Circuit explained in *Al Otro Lado*, that is inadequate. There, the Ninth Circuit denied a motion to stay a three-week old injunction, explaining that the government's declarations purporting to show irreparable harm "contain[ed] only estimates, assumptions, and projections" relating to the amount of time and energy its officers would need to expend to comply with the injunction, instead of "evidence of *actual* burdens and delays" the movant had experienced since the injunction issued. 952 F.3d at

6195928

1007. That "weak showing" failed to justify the extraordinary remedy of a stay pending appeal. *Id.*

The same is true here. CoreCivic presents no evidence of actual harm incurred since the Court's orders took effect. In particular, CoreCivic has provided no evidence establishing that allowing the monitor to visit the facility in May, or go about his work of evaluating and reporting on the health care system, will harm CoreCivic in any way—much less cause irreparable harm. Indeed, CoreCivic took some steps to comply with portions of the PI Order as early as February, taking steps to modify the facility's attorney visitation spaces and legal call scheduling system. PI Order at 2; Doc. 82-1 ¶¶ 63–64; Borden Decl. ¶ 16.[3] CoreCivic and Defendants have also been working with the monitor since at least early April, providing remote access to CoreCivic's electronic health record system and producing records in response to his requests, as contemplated in the appointment order. Doc. 112 at 2; Br. at 10, n. 5; Borden Decl. ¶¶ 7–9.

***Fourth***, CoreCivic's passing references to non-monetary harm are easily dismissed. For example, CoreCivic's brief allusion to a due process deprivation is wafer thin and insufficient as a matter of law. *See Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*, 739 F.2d 466, 472 (9th Cir. 1984) (finding a purported constitutional claim "too tenuous" to constitute irreparable harm). CoreCivic has long been on notice of this litigation and the relief sought and submitted evidence that formed the backbone of Defendants' opposition to the preliminary injunction motion. *See* Doc. 133; Doc. 40-6, 82-1. Similarly, CoreCivic protests in passing that its contractual rights are at stake, Br. at 22, yet fails to provide the contract at issue or identify a single impaired contractual term.

In stark contrast to CoreCivic's failure to show irreparable harm to it, Plaintiffs have suffered and will continue to suffer true irreparable harm, including irreversible and potentially life-threatening medical outcomes, absent an injunction. *See Flores*, 675 F. Supp. 3d at 1060 (comparing the lack of irreparable harm absent a stay with the irreparable harm the Court found plaintiffs would suffer absent a preliminary injunction). In fact, the Court described how Named Plaintiff Fernando Viera Reyes, who suffers from advanced prostate cancer, was denied necessary medical attention *even after* the Court issued an order regarding his particular care. MOD at 2, 5.

---

[3] Plaintiffs in no way concede Defendants' or CoreCivic's full or adequate compliance with the Court's orders and, in fact, have repeatedly raised compliance concerns with Defendants' counsel.

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

CoreCivic claims that Plaintiffs failed to identify any harm to a class member after the February 10 PI Order, Br. at 23, but that is false. Plaintiffs filed a second notice of noncompliance regarding Mr. Viera Reyes on February 26. Doc. 80. And in any event, the criticism has the legal standard backwards; Plaintiffs have no obligation to continue proving the need for an injunction after having received it. The burden is on CoreCivic, as the movant, to present evidence showing irreparable harm to it absent a stay *and* a lack of harm to Plaintiffs if a stay is granted.

And, to be clear, there is ample evidence of continued irreparable harm to Plaintiffs. Plaintiffs' counsel receives near daily communications from detained people and their families detailing appalling medical care at California City. *See* Decl. of Gabriela Pelsinger ("Pelsinger Decl.") ¶¶ 2–4. This is no secret; the press has reported it, and a U.S. Senator just opened an inquiry into one particularly egregious case.[4] The record evidence and sequence of events over the past several months make clear that without a Court order—and, appallingly, even with the benefit of such an order—"it is not safe to be sick" at California City. MOD at 5. Because CoreCivic can show neither harm to itself nor a lack of harm to Plaintiffs, the Court should deny its motion to stay.

**B. CoreCivic fails to make the requisite showing that its appeal is likely to succeed.**

CoreCivic also fails to make the necessary "strong showing" that it is likely to succeed on the merits of its appeal of the Court's orders. *Nken*, 556 U.S. at 434. As thoroughly documented in the Court's MOD, the Court's orders find ample support in the record and the law.

**1. CoreCivic fails to make the requisite showing with regard to constitutionally inadequate health care at California City.**

The Court correctly concluded that Plaintiffs are likely to prevail on their claim that Defendants fail to provide constitutionally adequate medical care at California City. As the Court recognized and detailed in its MOD, the evidentiary record supporting that conclusion is voluminous and unequivocal, and the law is straightforward.

---

[4] *See* Ko Lyn Cheang, *Sen. Padilla Opens Inquiry into Condition of Ill Refugee at California's Largest ICE Detention Center*, S.F. Chron. May 1, 2026, https://www.sfchronicle.com/california/article/inquiry-into-medical-care-ice-detention-facility-22235407.php; Ko Lyn Cheang, *'Waiting for Him to Die:' ICE Detainee's Sister Raises Alarm about Medical Neglect at California Facility*, S.F. Chron., April 15, 2026, https://www.sfchronicle.com/california/article/ice-california-city-medical-crisis-22203807.php.

6195928

The Court credited the findings and opinions of Plaintiffs' medical expert, Dr. Todd Wilcox, whose qualifications Defendants never disputed and whose findings were based on review of Defendants' own records. MOD at 4–5. Among other things, the Court found: "Defendants struggle to deliver standard of care for common uncomplicated problems, let alone for patients with complex medical care needs"; "the patient intake process is incomplete and haphazard"; intake staff "lack the academic preparation and training necessary to perform" assessments; "referrals to medical providers are delayed, even for urgent medical needs"; patients experience "dangerous lapses" in prescription medication"; the sick call system "suffers from systemic delays and failures," with "urgent medical symptoms" going "unaddressed or unacknowledged for days or weeks"; and there is "no effective system" for specialty care. *Id.* at 4–5 (quoting Dr. Wilcox's declarations). The Court continued, emphasizing that "when care is provided, it is often deficient," with records showing out of stock medications, "poor clinical judgment, inadequate recordkeeping, and treatment that failed to comport with the prevailing standard of care." *Id.* at 4. In addition to Dr. Wilcox's expert testimony, the Court relied on the declarations of dozens of detained people who reported inadequate medical care, *id.* at 5 & n.4, including individuals at risk for gangrene or amputation, sudden cardiac death, and metastasizing cancer. *Id.* at 5. Far from refuting Plaintiffs' evidence, the Court found that Defendants' evidence (i.e., a declaration from CoreCivic's own Regional Medical Director) "in many ways supports Dr. Wilcox's findings" by "acknowledg[ing] delays in 'offsite appointment scheduling' and issues pertaining to ordering/renewing medications, adjusting dosage, scheduling follow-up appointments, establishing chronic care appointments, ordering/scheduling lab tests, ordering medical diets, and scheduling evaluations." *Id.* at 5–6.

Having made these factual findings, the Court then correctly recited the law, noting that civil detainees are of course entitled to adequate medical care, that the Fifth Amendment only requires an objective showing, and that a violation of the Eighth Amendment standard for inadequate medical care necessarily violates the Fifth Amendment. *Id.* at 9. The Court concluded that Plaintiffs had made a "factual showing as to the inadequacy of health care" at California City that was likely to succeed under this legal framework. *Id.* at 11.

Unable to poke holes in the Court's well-supported decision, CoreCivic's brief essentially

6195928

ignores it. Indeed, CoreCivic barely devotes three paragraphs to the merits of Plaintiffs' medical care claim. In those few paragraphs, CoreCivic disregards the record evidence, fails to provide a single citation to the MOD, and leans on snippets from the February 6 hearing to pretend the "systemic deficiencies" it concedes the Court found show "at most, negligence." Br. at 14–15. CoreCivic's smoke and mirrors are unconvincing.

The "reckless disregard" standard CoreCivic invokes is the same one Plaintiffs briefed in the PI motion, *see* Doc. 22 at 20–22, and that the Court applied. The cases the Court relied on apply the "reckless disregard" standard. *See* MOD at 9 (citing *Gordon v. Cnty. of Orange*, 888 F.3d 1118 (9th Cir. 2018); *Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016)). And those cases make clear that "reckless disregard" is part of a multi-pronged, objective analysis, which the Court expressly invoked. *See id.* at 9 ("[T]he Court employs an objective standard to determine whether medical care is adequate.").[5] No magic words were required.

In any event, the record evidence, including Defendants' noncompliance with the Court's order resolving Plaintiffs' TRO motion, shows that Defendants failed to act with respect to known medical conditions, putting class members at "substantial risk of serious harm," and placing them in "sufficiently imminent danger." *Castro*, 833 F.3d at 1071; *see also Guel v. Cnty. of San Bernardino*, 2024 WL 5185331, at *3, *5 (C.D. Cal. Oct. 23, 2024) (finding that defendants "were aware of Plaintiff's injury and need for medical attention, yet repeatedly chose inaction" and were repeatedly warned of Plaintiff's severe injuries and need for medical care but denied treatment). These harms included failure to provide specialty care resulting in catheter placement, discontinuation of insulin causing diabetes destabilization, lack of cardiology care causing ongoing and progressive damage to the heart muscle, lungs, and vascular system. Doc. 49-3 ¶¶ 24–26; s*ee also* Doc. 22-3 ¶¶ 30, 33, 37–38, 48, 51, 62, 66, 81–86, 89, 91, 98, 106, 115–16, 128. A decision to

---

[5] That standard, sometimes referred to as "reckless disregard" or "objective deliberate indifference," requires: (1) the government made an intentional decision or failed to act with respect to a known condition, *Castro*, 833 F.3d at 1071; *Guel*, 2024 WL 5185331, at *3; (2) the act or omission placed plaintiff at substantial risk of serious harm, *Castro*, 833 F.3d at 1071; (3) the government did not take reasonable measures to address the risk, even though a reasonable officer would have appreciated the risk, *id.*; and (4) as a result, the government caused plaintiff's injuries, *id.* Notably, "objective unreasonableness" does not require "actual awareness of the level of risk." *Gordon*, 888 F.3d at 1125 & n.4.

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

ignore "medical needs, even for less than 24 hours, despite repeated warnings of the severity of [the person's] injury," establishes objective unreasonableness. *Guel*, 2024 WL 5185331, at \*4. As the Court here found, Defendants ignored numerous patients' medical needs not just for days but for months. MOD at 5. Such "poor clinical judgment" and "treatment that failed to comport with the prevailing standard of care," *id.* at 4, is unquestionably relevant to the objective unreasonableness—or reckless disregard—standard. *See, e.g.*, *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 670 (9th Cir. 2021) (considering the medical standard of care that a "reasonable nurse" would have administered to determine whether defendants' actions were objectively unreasonable).

Later in its brief, CoreCivic complains that Plaintiffs' "allegations of systemic failures" as to all claims "were insufficiently based on anecdotes and/or evidence of isolated and sporadic incidents at one facility, which had only been open since September 2025 (five months) when Judge Chesney granted the preliminary injunction." Br. at 16. This is nonsensical. First, this litigation concerns only one facility; CoreCivic can hardly fault Plaintiffs for not offering evidence regarding other detention centers. Second, more than five months (the facility in fact opened in August) is enough time for harm to accrue requiring a preliminary injunction. Finally, as to medical care, Judge Chesney expressly rejected CoreCivic's argument: "the Court is not persuaded by Defendants' argument that Dr. Wilcox reviewed an insufficient subset of patient records to allow him to reach his conclusions; rather the Court finds Dr. Wilcox has adequately explained why the deficiencies he identifies are systemwide." MOD at 4 n.3. Here again, CoreCivic's brief refuses to engage with the full record and MOD, as this Court instructed. Doc. 120.

Rather than grappling with the written opinion, CoreCivic cites stray remarks made during the day-long PI hearing in a baseless attempt to undermine the Court's conclusions. As an initial matter, the cited remarks are in no way inconsistent with the MOD.[6] But even if they were, the law is clear: the written opinion controls. *See Playmakers LLC*, 376 F.3d at 896 ("Where the record includes both oral and written rulings on the same matter, we review the written opinion and not the oral statements. We do so because oral responses from the bench may fail to convey the judge's

---

[6] Stray remarks from the Court that individual staff at California City may not be "really bad people" or that "they're trying to do their best" is irrelevant to the legal test, which omits subjective intent. *See Gordon*, 888 F.3d at 1125; *Castro*, 833 F.3d at 1071.

6195928

ultimate evaluation."); *see also Parsons v. Ryan*, 912 F.3d 486, 498 (9th Cir. 2018) ("We do not review oral statements from the bench on a matter later committed to writing; we review instead the written order entered by the district court.").

### 2. CoreCivic fails to make the requisite showing with regard to constitutionally inadequate attorney access.

Next, CoreCivic cursorily argues that the Court incorrectly determined that Plaintiffs were likely to prevail on their First and Fifth Amendment attorney access claims since it failed to apply *Turner v. Safley*, 482 U.S. 78 (1987). Again, CoreCivic is wrong. To start, *Turner*, which considers whether a restriction is justified by legitimate penological interests, concerned prisoners' rights and does not apply in the civil immigration detention context. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982). Even so, the Court's findings satisfy *Turner*. Namely, the Court found that "Defendants employ an essentially blanket policy preventing in-person, contact visits between detained persons and their lawyers," and had failed to provide an "adequate justification for such a restriction" or the many other impediments to attorney access at the facility. MOD at 11–12.[7]

### 3. The Court's preliminary injunction order complies with Rule 65.

CoreCivic's brief devotes substantial effort to arguing that Judge Chesney's PI Order violates Rule 65, which requires the court to explain its reasoning, state its terms specifically, and provide reasonable detail about what is required or enjoined. Fed. R. Civ. P. 65. The Court's orders satisfy those requirements. CoreCivic's arguments to the contrary focus primarily on cherry-picking various statements from hearings while ignoring others—a tactic that the law rejects. *See Playmakers LLC*, 376 F.3d at 896. But taken on their own terms, CoreCivic's arguments fail.

CoreCivic first argues that the PI Order's medical provisions are too vague to satisfy Rule 65. Br. at 17. As explained above, that argument fails; courts routinely employ such language in cases involving medical care at prisons or detention facilities. *See supra* Part II.A.

Next, CoreCivic spends nearly two pages of its supplemental brief faulting Judge Chesney

---

[7] CoreCivic raises no challenge to the PI Order's provisions concerning punitive conditions of confinement, except by arguing that the Court's order to provide temperature-appropriate clothing is too vague to satisfy Rule 65. *See* Br. at 20. That argument fails. *See infra* Part II.B.4.

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

for failing to appoint the monitor pursuant to the requirements set out in 18 U.S.C. § 3626(a)(1), a provision of the Prison Litigation Reform Act ("PLRA") concerning the appointment of special masters. This argument betrays a misunderstanding not only of the appointment order and binding precedent from the Ninth Circuit, but also of the very nature of the detention at issue in this case. Put simply, the monitor is not a special master and the PLRA does not apply here.

To start, the class members are all subject to civil immigration detention, not criminal custody. *See* MOD at 1. The Ninth Circuit held long ago that, "[c]onsistent with the principle that deportation is a civil rather than a criminal procedure, . . . an alien detained by [ICE] pending deportation is not a 'prisoner' within the meaning of the PLRA." *Agyeman v. I.N.S.*, 296 F.3d 871, 886 (9th Cir. 2002). The PLRA therefore has no application here. And while CoreCivic seems to concede the point, *see* Br. at 18, it nonetheless argues that the appointment order "violates several mandatory provisions of [18 U.S.C. § 3626]." *Id.* at 18–19. Whether CoreCivic is just confused or is intentionally misleading, its challenge to the monitor's appointment is baseless.

What's more, even if the PLRA applied in this case (which it doesn't), Judge Chesney did not err in her appointment of the monitor. ***First***, the monitor is not a special master. As is clear on the face of the appointment order, the monitor's powers nowhere resemble the quasi-judicial powers afforded to special masters under 18 U.S.C. § 3626. ***Second***, the PLRA special master provisions impose no limits on courts' inherent powers to employ monitors and other agents to assist in judicial functions, even in cases involving prison litigation. *See Plata v. Schwarzenegger*, 603 F.3d 1088, 1096 (9th Cir. 2010). Indeed, courts routinely hold that they can appoint monitors pursuant to their inherent equitable powers without regard to statutes governing special masters, such as 18 U.S.C. § 3626.[8] ***Third***, to the extent CoreCivic argues that the Court erred because it exercised that equitable power in the context of a preliminary, rather than permanent, injunction, *see* Br. at 18–19, such an argument has been squarely rejected by the Ninth Circuit, *see Nat'l Org. For the Reform of Marijuana L. v. Mullen*, 828 F.2d 536, 544 (9th Cir. 1987).

---

[8] *See, e.g.*, *Melendres v. Skinner*, 113 F.4th 1126, 1134 (9th Cir. 2024); *Handberry v. Thompson*, 446 F.3d 335, 352 (2d Cir. 2006); *Indep. Living Ctr. of S. Cal. v. City of L.A.*, 2025 WL 1712398, at *3 (C.D. Cal. Mar. 31, 2025); *Hadix v. Caruso*, 465 F. Supp. 2d 776, 810 (W.D. Mich. 2006), *amended on reconsideration*, 2007 WL 162279 (W.D. Mich. Jan. 16, 2007); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1239 (M.D. Ala. 2004).

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

Finally, CoreCivic invokes Rule 65 in challenging the Court's order that Defendants provide temperature-appropriate clothing, such as sweatshirts, sweatpants, and blankets, to the people housed in California City. Br. at 20. CoreCivic's arguments fail. The record evidence showed: (a) detained people report extremely cold temperatures at California City; (b) unlike at other facilities, Defendants provided only thin pants and shirts; (c) at some point, Defendants started providing "jackets"; and (d) those jackets were thin windbreakers that provided no warmth. MOD at 8, 12 & n.7; 40-6 ¶¶ 71, 73. The Court had therefore ordered Defendants to provide temperature-appropriate clothing and blankets. *See* PI Order ¶ 4(a). The Court further explained that was "no dispute that Defendants provide no sweatshirts, sweatpants, or similar protective clothing" to the people in their charge, that "many detainees . . . could not afford to buy sweatshirts at the commissary," that "the unrebutted evidence is that those jackets do not provide adequate warmth," and that "prisons, as well as other ICE detention facilities, provide sweatshirts and sweatpants free of charge." MOD at 8, 12 & n.7. In spite of this, CoreCivic nonetheless asserts that this injunctive relief is "not specific" and that, in fact, it is "not required to do anything additional to comply." Br. at 20. The Court should reject this disingenuous reading of a straightforward order that does nothing more than direct Defendants to prevent people at California City from having to resort to "fashioning their socks into sleeves or beanies to keep warm." *See* MOD at 8.

### 4.   The Court properly granted provisional class certification.

The Court unquestionably applied the correct legal standard in granting provisional class certification, and CoreCivic's arguments to the contrary fail. CoreCivic's assertion that the Court failed to conduct a rigorous Rule 23(a) analysis is belied by the Court's MOD, which expressly addresses each Rule 23(a) requirement and sets out the Court's factual findings and legal conclusions as to each. MOD at 13–15. CoreCivic next claims that Judge Chesney's analysis was insufficiently rigorous because it supposedly adopted Plaintiffs' submission, which, CoreCivic claims, cited a docket entry that "does not exist in the record." Br. at 21 n.7. CoreCivic is wrong three times over. First, that docket entry (Doc. 48-5) most certainly exists—it is the unredacted version of Dr. Wilcox's reply declaration. Second, the MOD was in no way a "mere adoption" of Plaintiffs' proposed Findings of Fact and Conclusions of Law, as CoreCivic claims. Br. at 21.

6195928

Comparing the two documents reveals that the Court performed its own analysis, including factual findings and legal citations that Plaintiffs had not submitted. *Compare* Doc. 103 at 14–17 *with* MOD at 13–15. And third, no law or practice would have forbidden the Court from adopting Plaintiffs' proposal verbatim if it had found it expedient to do so. In short, CoreCivic offers no basis to suggest that the Court's analysis was legally insufficient or lacked requisite rigor.

The Court should also reject CoreCivic's argument that Judge Chesney improperly certified the class under Rule 23(b)(2) based on "only a handful of detainees' alleged medical conditions." Br. at 21. On the contrary, the Court expressly found that the challenged policies and practices were *systemic and facility-wide*; the alleged injuries arose from those same policies and practices affecting all detainees; and those injuries are capable of being addressed through uniform injunctive relief. MOD at 15. Certification is appropriate where the court finds a "pattern or practice that is generally applicable to the class as a whole." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010), *abrogated on other grounds as recognized by Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022). That is what the Court found here, based on the record. *See* MOD at 4 n.3, 14. Contrary to CoreCivic's contention, Plaintiffs were in no way required to show that "the other 800 detainees suffered any injury" to obtain certification. Br. at 21; *see Rodriguez*, 591 F.3d at 1125 ("The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2).").

CoreCivic's reliance on *Gomez* and *Algarin* is misplaced. In *Gomez*, the court denied Rule 23(b)(2) certification because the plaintiffs primarily sought money damages, which required individualized determinations, and because many class members, including the proposed class representative, lacked standing to pursue prospective injunctive relief. *Gomez v. J. Jacobo Farm Lab. Contractor, Inc.*, 334 F.R.D. 234, 253–55 (E.D. Cal. 2019). And in *Algarin*, the court denied certification because the injunctive relief sought would not benefit class members and because the plaintiffs sought individualized monetary relief. *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458–49 (S.D. Cal. 2014). Here, Plaintiffs seek only injunctive relief, and the record shows that the challenged policies and practices apply to all people detained at California City.

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928

**C.    A stay would substantially injure class members and the public interest.**

As the Court observed, the third and fourth *Nken* factors—the balance of hardships and the public interest—"merge when the Government is the opposing party." *Roe v. Critchfield*, 137 F.4th 921, 922 (9th Cir. 2025). Ignoring the Court's thorough analysis of these factors and the overwhelming record evidence of human suffering at California City, CoreCivic boldly contends that its own corporate interests outweigh the well-being of the roughly 1,600 individuals detained there. That is wrong, as the Court correctly concluded.

CoreCivic argues that Defendants will suffer irreparable harm to their interest in enforcing immigration law. Even if CoreCivic could be said to have standing to raise this argument on Defendants' behalf, the Court considered and rejected it on the merits. Specifically, the Court held that "it is always in the public interest to prevent the violation of a party's constitutional rights." MOD at 13 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). The Court further reasoned that avoiding "preventable human suffering" outweighs any administrative or financial concerns that Defendants may have. *Id.* (citing *Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004)). And the Court explained that "our society as a whole suffers when we neglect the vulnerable, or when we deprive them of their rights or privileges." *Id.* (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)). That remains true.

CoreCivic next claims that Plaintiffs will suffer no harm from a stay. Br. at 23. That argument fails under the slightest scrutiny; it would unquestionably harm Plaintiffs to stay an order requiring constitutionally adequate health care, an independent monitor who can report to the Court on patient care, and adequate access to their attorneys. CoreCivic also ignores the Court's well-documented finding that California City suffers from systemic failures rather than a "few examples of isolated and sporadic events," as CoreCivic suggests. *Id.*; *see also* MOD at 4 n.3. As noted above, the harms are continuous, ongoing, and documented. *See supra* Part II.A; Pelsinger Decl. ¶¶ 2–4; Borden Decl. ¶¶ 10–12.

**CONCLUSION**

For the foregoing reasons, the Court should deny CoreCivic's motion to intervene. If the Court grants that motion, however, then the Court should deny CoreCivic's motion to stay.

32

Dated: May 4, 2026

Respectfully submitted,

/s/ *Cody S. Harris*
KEKER, VAN NEST & PETERS LLP
STEVEN P. RAGLAND
CODY S. HARRIS
CANDICE MAI KHANH NGUYEN
CARLOS C. MARTINEZ
LISA C. LU

CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
PRIYA ARVIND PATEL
MARIEL VILLARREAL

/s/ *Margot Mendelson*
PRISON LAW OFFICE
MARGOT MENDELSON
TESS BORDEN
RANA ANABTAWI

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
KYLE VIRGIEN
FELIPE HERNANDEZ
MARISOL DOMINGUEZ-RUIZ
CARMEN IGUINA GONZALEZ

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO CORECIVIC'S SUPPLEMENTAL BRIEF
Case No. 1:26-cv-02546-JLT-CDB

6195928