Daniel P. Struck, Pro Hac Vice
AZ Bar #012377
Dana M. Keene, CA Bar #324993
Anne M. Orcutt, Pro Hac Vice
AZ Bar #029387
STRUCK LOVE ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Tel.:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
dkeene@strucklove.com
aorcutt@strucklove.com

Nicholas H. Rasmussen, Bar #285736
McCORMICK BARSTOW, LLP
7647 North Fresno Street
Fresno, CA  93720
Tel:  (559) 433-1300
Fax: (559) 433-2300
nrasmussen@mccormickbarstow.com

Attorneys for Intervenor CoreCivic, Inc.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ, et al., | Case No. 1:26-CV-02546-JLT-CDB |
| Plaintiffs, | **PROPOSED INTERVENOR CORECIVIC, INC.'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF REGARDING MOTION TO INTERVENE (Dkt. 82) AND MOTION TO STAY PENDING APPEAL (Dkt. 86)** |
| v. | |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Defendants, | |
| CORECIVIC, INC., | |
| Intervenor. | |

CORECIVIC'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE INTERVENTION AND STAY
CASE NO.1:26-CV-02546-JLT-CDB

**I.      This Court Should Grant CoreCivic Intervention.**

**A.      CoreCivic's Motion to Intervene Is Timely.**

Citing *Brown v. Google LLC*, 172 F.4th 1128 (9th Cir. 2026), Plaintiffs argue that the traditional three-part test for timeliness applies to CoreCivic's request. *Brown* distinguished *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir. 1997), on the ground that, whereas in *Alaska*, the interventor sought intervention for purposes of appealing a "final judgment," the intervenors in *Brown* (dissatisfied class members) sought intervention "*before* final judgment"— on the eve of a class-settlement-approval hearing to preserve their future right to appeal the refusal to certify a damages class. *Brown*, 172 F.4th at 1133-34. The court concluded that *Alaska* "did not create a special intervention rule for class actions" and, thus, applied the traditional three-part test for intervention. *Id*. at 1134. CoreCivic acknowledges *Brown*'s distinction but submits that *Alaska*'s "bright-line rule" still applies to the circumstances in this case.[1] CoreCivic seeks to intervene for purposes of appealing the Court's preliminary injunction—which, like the "final judgment" in *Alaska*, is a final, appealable order that must be appealed within 60 days. *See* 28 U.S.C. § 1292(a)(1); FRAP 4(a)(1)(B). Thus, the same "practical reality" present in *Alaska* is also present here: the appealing party "must do so within the time period to appeal." *Brown*, 172 F.4th at 1134. The intervenors in *Brown* sought to intervene before a final judgment to preserve their ability to appeal after the entry of final judgment. *Id*. *Alaska* applies. *See Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022); *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992); *Yniguez v. Arizona*, 939 F.2d 727, 734 (9th Cir. 1991).

Nonetheless, as discussed in its Supplemental Brief, CoreCivic's request to intervene was also timely under the traditional three-part test. Plaintiffs argue that CoreCivic should have moved to intervene when Plaintiffs filed their Complaint on November 12, 2025, or when they moved for a preliminary injunction (Dkt. 22) and temporary restraining order (Dkt. 27) in December 2025. This argument makes no sense because CoreCivic could not intervene to appeal orders and rulings that did not exist at those times. Plaintiffs also incorrectly argue that CoreCivic should have known

---

[1] The Ninth Circuit decided *Brown* just three days before CoreCivic filed its Supplemental Brief. Counsel was unaware of *Brown* until Plaintiffs filed their Opposition.

- 1 -

CORECIVIC'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE INTERVENTION AND STAY
CASE NO.1:26-CV-02546-JLT-CDB

since the outset of this case that Plaintiffs sought preliminary injunctive relief and appointment of a monitor. This argument misstates the standard. "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties, not the date it learned of the litigation." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021) (*quoting United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)). In urging the Court to determine timeliness based on the filing of the Complaint or Motion for Preliminary Injunction, Plaintiffs are inviting it to commit reversible error. *See id.* at 824.

Here, CoreCivic filed its Motion to Intervene on March 3, 2026, just 21 days after the Court's February 10 Order. (Dkt. 82.) Because Defendants had not yet decided to appeal or stay the Order, CoreCivic could not wait any longer to protect its interests. Indeed, Defendants still have not decided whether to proceed with an appeal. Defendants have explained that their notice of appeal was merely protective because "[t]he process to determine whether an appeal is appropriate remains ongoing." (Dkt. 132 at 1.) CoreCivic's March 3, 2026 request to intervene was timely. Even Plaintiffs do not dispute that 21 days was unreasonable. *Cf. Ameriprise Fin. Servs., LLC v. Intervening Advisors*, 2026 WL 84565, at *1 (9th Cir. Jan. 12, 2026) (two-month delay in filing motion to intervene was not untimely).

Plaintiffs accuse CoreCivic of "feigning surprise" by the appointment of a monitor because they had proposed appointing one four months earlier. (Dkt. 139 at 32–33.) Again, Plaintiffs misstate CoreCivic's position. CoreCivic argued that it was finally forced to intervene because Plaintiffs had proposed an appointment order which significantly expanded upon the preliminary injunction. (Dkt. 135 at 14.) Plaintiffs do not dispute this. Nor do they dispute that Judge Chesney herself did not expect to address Plaintiffs' request for a preliminary injunction initially at the hearing when she decided to transfer the case to this Court. (Dkt. 99, R.T. 3/10/26 at 52:21–14.)

Plaintiffs argue that "CoreCivic did nothing to protect its alleged operational or financial interests" when they moved for **a temporary restraining order**. (Dkt. 139 at 15.) But CoreCivic's rights were adequately protected at that time.

That CoreCivic submitted declarations from Warden Chestnut in support of Defendants' opposition briefs is also irrelevant. Plaintiffs' arguments that Warden Chestnut could have provided

- 2 -

CORECIVIC'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE INTERVENTION AND STAY
CASE NO.1:26-CV-02546-JLT-CDB

standards and other information before Judge Chesney issued a preliminary injunction disregards the fact that the information he provided was directly in response to issues that she raised for the first time at the February 6, 2026 hearing. Warden Chestnut provided information about current conditions to show that the alleged facility conditions she relied on in granting a preliminary injunction had changed. *See Roman v. Wolf*, 977 F.3d 935, 945 (9th Cir. 2020) ("We vacate the provisions of the injunction ordering specific reductions in the detainee population and specific changes in conditions at the facility and remand to the district court for further proceedings consistent with this disposition and with the latest facts.") (citing *Valentine v. Collier*, 960 F.3d 707, 707 (5th Cir. 2020) (per curiam)).

Plaintiffs argue that they are prejudiced because if CoreCivic had "engaged in this litigation before the preliminary injunction proceedings, it could have raised its concerns before the parties and the Court expended significant resources briefing, arguing, and considering the scope of relief." (Dkt. 139 at 16.) But "[t]he only 'prejudice' that is relevant is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Kalbers*, 22 F.4th at 825 (internal quotations and citation omitted). "[T]he fact that including another party in the case might make resolution more difficult does not constitute prejudice." *Id.* (internal quotations and citation omitted). Nor does the fact that "permitting intervention would raise additional complicating issues that would unduly delay this action." *Id.* (internal quotations and citation omitted). "[E]very motion to intervene will complicate or delay a case to some degree—three parties are more than two. That is not a sufficient reason to deny intervention." *Id.* (internal quotations and citation omitted).

Plaintiffs quote CoreCivic out of context to suggest that "CoreCivic claims that because 'this Court has proven highly responsive in this and other cases,' the parties should now re-present already decided issues to this Court." (*Compare* Dkt. 139 at 16, *with* Dkt. 135 at 16.) In requesting limited intervention to seek appellate review of Judge Chesney's Orders, CoreCivic does not seek to re-present any decided issues to *this* Court.

Plaintiffs argue that "the preliminary injunction had already fully matured *before* CoreCivic sought to intervene" and "CoreCivic makes no request to participate in the litigation going forward,

- 3 -

rendering CoreCivic's references to future procedural deadlines a red herring." (Dkt. 139 at 17.) This argument also fails because, as discussed above, the "crucial date" is when CoreCivic became aware that Defendants would not adequately protect its rights by expeditiously filing a notice of appeal and moving for an emergency stay pending appeal. CoreCivic's references to future dates show that this case is still in its infancy—a fact that cannot be disputed.

Lastly, Plaintiffs argue that timeliness is analyzed "more strictly" under permissive intervention but fail to explain how the standard differs from mandatory intervention. Plaintiffs cite only to dictum in *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997), where the court applied the same standard for mandatory and permissive intervention. Because CoreCivic's motion is timely for the reasons above, it is timely for the purpose of permissive intervention.

### B.    CoreCivic Has a Right to Intervene to Seek Appellate Review.

Plaintiffs do not dispute that CoreCivic has interests in the ownership and operation of the Facility that are directly affected by Judge Chesney's Orders. Citing an unpublished case, Plaintiffs argue that the effects of the Orders on those interests must be "harmful." (Dkt. 139 at 17.) But that case explained this means only that the court's rulings "*actually* will affect the applicant." *San Francisco Baykeeper v. United States Fish & Wildlife Serv.*, 2021 WL 3426961, at *6 (N.D. Cal. Aug. 5, 2021). For the same reasons CoreCivic will suffer irreparable harms absent a stay, *see infra* at § II.B, the Orders have already affected its interests and will continue to do so.

Despite Plaintiffs' rhetoric, CoreCivic has never suggested "that it has a contractual interest in not being bound by the constitution or by court order—or that it cannot comply with its contract terms if it is so bound." By asserting its rights to intervene, CoreCivic does not in any way suggest that it is above the law. CoreCivic also has not waived its argument that the monitor's inspection would violate its right to counsel. That issue arose only when Judge Chesney ordered that counsel not be present to protect the monitor's independence. Plaintiffs' offer to stipulate to counsel being present would violate the purpose of Judge Chesney's ruling.

Plaintiffs argue a presumption arises that CoreCivic is adequately represented because Defendants are government officials. But CoreCivic has already rebutted any such presumption by

- 4 -

showing that Defendants have inadequately represented its interests by not expeditiously filing an appeal and moving for a stay pending appeal. Indeed, Plaintiffs argue that CoreCivic's interests diverged with Defendants following the TRO proceedings in December 2025. While Plaintiffs offer no explanation, their argument concedes that CoreCivic's and Defendant's interests have diverged.

### C.    CoreCivic Should Be Permitted to Intervene to Seek Appellate Review.

Plaintiffs incorrectly argue that CoreCivic has not addressed the factors in *Spangler v. Pasadena City Board of Education,* 552 F.2d 1326, 1329 (9th Cir. 1977). Although it did not expressly cite *Spangler*, CoreCivic addressed the same factors throughout its briefing (nature and extent of its interests, standing, legal positions advanced, and relation to the merits). (Dkt. 135 at 16–19; Dkt. 82 at 15–21.) CoreCivic also argued that Defendants have not adequately represented its rights with respect to the appeal and stay, intervention will not unduly delay or prejudice adjudication of the parties' rights, and its participation will significantly contribute to the development of fact issues and to the just and equitable adjudication of legal issues on appeal. (*Id.*) Moreover, Plaintiffs argue only three *Spangler* factors weigh against permissive intervention: that CoreCivic's participation will unduly delay vital relief, that it has contributed to the factual record already, and that Defendants adequately represent them. They additionally contend that CoreCivic's disclaimer of its desire to participate in future proceedings makes its intervention counterproductive. These arguments fail because they improperly assume that CoreCivic seeks general rather than limited intervention (for purposes of appeal and a stay).

## II.    This Court Should Stay Judge Chesney's Orders Pending Appeal.

### A.    CoreCivic Is Likely to Succeed on the Merits of an Appeal.

Plaintiffs argue that Judge Chesney cited the correct legal standard in the Memorandum Decision and that the record contains evidence to support a finding of reckless disregard to medical care. But Judge Chesney never made that finding, and her statements at the February 6, 2026 hearing belie any finding of deliberate indifference.

With respect to Plaintiffs' First Amendment claims, Plaintiffs do not dispute that Judge Chesney did not apply the *Turner* standard. Plaintiffs argue that *Turner* applies only to inmates, but they fail to cite any authority to support that argument. *See, e.g., Kindred v. Allenby*, 2019 WL

- 5 -

4013463, at *2 (E.D. Cal. Aug. 26, 2019) ("The *Turner* framework applies to civil detainees … as well as to prisoners."), *aff'd sub nom. Kindred v. Bigot*, 821 F. App'x 842 (9th Cir. 2020) ("Contrary to Kindred's contention, the district court did not err in applying the *Turner* factors to him as a civil detainee."); *Lyon v. U.S. Immigr. & Customs Enf't*, 171 F. Supp. 3d 961, 986 & n.18 (N.D. Cal. 2016) (applying *Turner* to immigration detainees' claims that phone restrictions violated due process); *see also Herrick v. Strong*, 745 F. App'x 287 (9th Cir. 2018); *Hydrick v. Hunter*, 500 F.3d 978, 991 (9th Cir. 2007).

Here, Judge Chesney's Memorandum Decision does not even cite *Turner*. And contrary to their claim, adopting Plaintiffs' proposed findings that there was a "blanket policy" and "no justification for such a policy" (Dkt. 103 at 18) does not satisfy that legal standard. *See Turner v. Safely*, 482 U.S. 79, 89–91 (1987) (articulating four factors). Judge Chesney did not consider the applicable factors and showed no deference to Warden Chestnut's expertise on the issues. *See id.* (requiring judicial deference to facility administrators).

Plaintiffs also do not dispute that Judge Chesney erred by not applying the correct legal standard for a Rehabilitation Act claim because she did not find they established detainees were discriminated against solely by reason of a disability. (Dkt. 136 at 15–16.) They also did not respond to CoreCivic's arguments that Judge Chesney erred in finding that Plaintiffs established irreparable harm and that the equities balanced in their favor. (Dkt. 135 at 22–23.) They have thus waived or conceded these issues. At the very least, CoreCivic has raised serious questions regarding the merits of its appeal. *See, e.g.*, *Klamath-Siskiyou Wildlands Ctr. v. Grantham*, 2019 WL 2325555, at *1 (E.D. Cal. May 31, 2019) (granting stay pending appeal of preliminary injunction, finding the appeal raised serious questions regarding the likelihood of success on the merits of the appeal and the balance of equities tipped in favor of stay).

**1.      The Preliminary Injunction Order Still Violates Rule 65.**

Plaintiffs do not dispute that the February 10, 2026 Order contains terms that Judge Chesney acknowledged were too general for anyone to understand what they must do to comply with the

CORECIVIC'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE INTERVENTION AND STAY
CASE NO.1:26-CV-02546-JLT-CDB

Order, especially with respect to the medical provisions.[2] (Dkt. 235 at 23–24; Dkt. 76 at 61:9–16, 61:17–19, 63:5–6, 10–14.) Nor do they dispute that certain terms are vague and ambiguous. (Dkt. 139 at 21.) Plaintiffs cite two cases where the court used similar terms, but neither case involved a challenge that the preliminary injunction order was vague and ambiguous or otherwise violated Rule 65. *See Pablo Sequen v. Albarran*, 810 F. Supp. 3d 1084, 1134 (N.D. Cal. 2025); *Toussaint v. Rushen*, 553 F. Supp. 1365, 1385 (N.D. Cal. 1983).

In response to CoreCivic's argument that Judge Chesney erred to the extent she relied on cases that appointed a special master pursuant to 18 U.S.C. § 3626(a)(1), Plaintiffs once again misstate CoreCivic's position. CoreCivic does not contend that § 3626(a)(1) applies, which is why Judge Chesney erred. She also erred by delegating her judicial responsibilities to an external monitor to overcome the deficiencies in the February 10, 2026 Order. *See Armstrong v. Brown*, 768 F.3d 975, 987–88 (9th Cir. 2014).[3]

### 2. The Memorandum Decision Fails to Follow the Correct Legal Standards for Granting Provisional Class Certification.

Plaintiffs do not deny their counsel's admission that provisional class certification was unnecessary. (Dkt. 75 at 48:16–50:8.) Judge Chesney's wholesale adoption of Plaintiffs' proposed findings that Rule 23(a)'s elements were met hardly satisfies the rigorous analysis and significant proof standard.[4] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355–57 (2011). She also erred

---

[2] Plaintiffs dispute only the specificity of the provision relating to temperature-appropriate clothing in Paragraph 4(a). CoreCivic cited that provision to illustrate that a dispute subsequently arose. Plaintiffs point to the Memorandum Decision to argue that CoreCivic's reading of Paragraph 4(a) is "disingenuous" because it found "some detained people resorting to fashioning their socks into sleeves or beanies to keep warm." (Dkt. 139 at 30, citing Dkt. 11 at 9.) That finding, however, does not alter the fact that Paragraph 4(a) does not define what is temperature-appropriate clothing.

[3] Plaintiffs' cases are readily distinguishable because they did not involve appointment of a monitor to adjudicate compliance with the terms of a vague and ambiguous preliminary injunction order. *See Melendres v. Skinner*, 113 F.4th 1126, 1135 (9th Cir. 2024) (assignment to the monitor of "responsibilities related to the *implementation* of remedial measures—an executive function—rather than the *adjudication* of compliance with the injunction."); *Indep. Living Ctr. of S. Calif. v. City of Los Angeles*, 2025 WL 1712398, at *2 (C.D. Cal. Mar. 31, 2025) (monitor for enforcement of settlement agreement); *Hadix v. Caruso*, 465 F. Supp. 2d 776, 778–81 (W.D. Mich. 2006) (monitor for enforcement of consent decree); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1239–41 (M.D. Ala. 2004) (monitor for enforcement of settlement agreement).

[4] Because CoreCivic only has public access to the Court's docket, it was unaware that an unredacted copy of the Wilcox Reply Declaration was filed at Dkt. 48-5. CoreCivic's lack of access to the entire record further illustrates it is not adequately represented by the parties.

CORECIVIC'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE INTERVENTION AND STAY
CASE NO.1:26-CV-02546-JLT-CDB

because certification of a Rule 23(b)(2) class is appropriate only where the plaintiffs have established that the entire class is harmed such that injunctive relief would be appropriate for the class as a whole. *Id.* The anecdotal evidence of isolated and sporadic incidents that Judge Chesney relied on does not meet these standards. *Id.* at 358.

Plaintiffs fail to meaningfully distinguish *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 334 F.R.D. 234, 255 (E.D. Cal. 2019), and *Algarin v. Maybelline*, *LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014). In both cases, the court correctly denied Rule 23(b)(2) certification because not all class members were injured such that injunctive relief was not appropriate as to the class as a whole. Although they denied certification on the additional ground that the named plaintiffs' claim for money damages was not merely incidental, that is irrelevant because Plaintiffs do not seek damages.

### B.    CoreCivic Will Be Irreparably Harmed Absent a Stay Pending Appeal.

Plaintiffs do not dispute that absent a stay pending appeal, the February 10, 2026 and March 30, 2026 Orders will continue impairing CoreCivic's operation and management of the Facility. (Dkt. 86 at 25–29; *see also* Dkt. 72, ¶ 2; Dkt. 112.) Plaintiffs misplace reliance on *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021), to argue that economic harms are not irreparable. In that case, the court recognized that economic harm is irreparable where, as here, "parties cannot typically recover monetary damages flowing from their injury." *Id.* at 677. It further acknowledged that "[i]ntangible injuries may also qualify as irreparable harm, because such injuries 'generally lack an adequate legal remedy.'" *Id.* Thus, a significant change in organizations' programs was an intangible and irreparable injury. *Id.*

Plaintiffs also cite *Sampson v. Murray*, 415 U.S. 61, 90 (1974), for the proposition that "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." They omit, however, that the very next sentence explains: "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Here, CoreCivic's harms are irreparable because it has no counterclaims from which it can, through the ordinary course of this litigation, seek compensation. Plaintiffs also cite *Al Otro Lado v. Wolf*, 952 F.3d 999, 1008 (9th Cir. 2020), where the court found that spending an additional 15 to 30 minutes

- 8 -

during a credible fear hearing—a task that it was already performing—to identify members of the class was not a sufficient diversion of resources to constitute irreparable harm. Unlike that case, CoreCivic is being forced to expend significant staff time and legal resources on tasks it would not otherwise have to perform but for Judge Chesney's Orders.

Plaintiffs argue that CoreCivic has not identified any actual harms or shown that a three-day monitor visit is harmful. A three-day monitor inspection will disrupt Facility operations and patient care during the visit. (Ex. 1, ¶¶ 18–21.) That others may have conducted shorter visits for different reasons is irrelevant and does not negate the harm here, especially since they were not pursuant to a court order under threat of legal enforcement.

Further, Judge Chesney's Orders have already affected CoreCivic's interests. Although Warden Chestnut provided only estimated costs before the changes were implemented, CoreCivic has since incurred the following actual costs, including: (1) at least $28,775 to subdivide the four legal visitation rooms and install soundproofing barriers; (2) $104,083.20 per year to staff the area with an additional officer; (3) $64,468.33 to separate the existing VAV booths into two areas and create two booths in the female housing unit; and (4) at least $104,083.20 per year to comply with the Order requiring 90-minute legal calls by adding officers to monitor the new VAV areas. (*Id.*, ¶¶ 7–17.)

In response to the Court's inquiry regarding contractual provisions indicating who "bears the costs of implementing operational changes imposed by the Court's preliminary injunction order," the following are relevant provisions. CoreCivic's agreement with ICE is an "indefinite delivery indefinite quantity (IDIQ) contract … in accordance with FAR 52.216-25." (Ex. 2, Attach. A at 2.) CoreCivic is compensated a fixed amount for the "Facility Operating Charge," and a per diem rate based on the number of detainees. (*Id.* at 3.) The contract further provides that CoreCivic "shall furnish all personnel, management, equipment, supplies, training, certification, accreditation, and services necessary for performance of all aspects of the contract," and "[u]nless explicitly stated otherwise, [CoreCivic] is responsible for all costs associated with and incurred as part of providing the services outlined in this contract." (*Id.*, Attach. B at 2.)

CORECIVIC'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE INTERVENTION AND STAY
CASE NO.1:26-CV-02546-JLT-CDB

The agreement explicitly provides:

> Should a change in the applicable standards and laws identified in this contract result in a documentable financial impact on the contractor, the contractor must notify the CO within 30 calendar days of receipt of the change and both contractor and Government will negotiate best course of action, either 1) a waiver to the Standards or, 2) negotiate a prospective change in the bed day or other rates. Please note, any change in compensation rate will be prospective, beginning on the date the change is effective.

(*Id*.) CoreCivic has not sought reimbursement under this provision because the February 10, 2026 and March 30, 2026 Orders do not change the applicable standards (i.e., the 2025 National Detention Standards) or the law. Even if, however, the provision were to apply, it at most provides for negotiation, not a guarantee of full reimbursement.

Plaintiffs misplace reliance on *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984), for the proposition that "a purported constitutional claim was 'too tenuous' to constitute irreparable harm." (Dkt. 139 at 23.) That finding was based on facts that showed no equal protection violation. The court did not hold that a constitutional violation alone is too tenuous to support irreparable harm. Indeed, it held that "[a]n alleged constitutional infringement will often alone constitute irreparable harm." *Id.* That CoreCivic had notice of this litigation does not negate the fact that Plaintiffs chose not to name CoreCivic as a Defendant, and the February 10, 2026 and March 30, 2026 Orders deprive it of its property and liberty interests without due process of law.

**C.    The Balance of Equities Weighs in Favor of a Stay Pending Appeal.**

Plaintiffs argue that they will be harmed because their counsel has received reports from detainees about inadequate care. But Plaintiffs' counsel's staff declared: "I have not independently verified the truth of these reports and do not relate them to the Court for that purpose." (Dkt. 139-2, ¶ 5.) These vague and unverified allegations are hardly evidence of actual harm to Plaintiffs if a stay pending appeal is granted. If anything, these alleged reports show a stay of it pending appeal will not alter the status quo because they were received after the preliminary injunction issued.

**III.    Conclusion**

For these additional reasons, this Court should grant CoreCivic's request to intervene and stay the Orders pending appeal.

- 10 -
CORECIVIC'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE INTERVENTION AND STAY
CASE NO.1:26-CV-02546-JLT-CDB

DATED this 11th day of May, 2026.

By /s/ Daniel P. Struck
Daniel P. Struck
Dana M. Keene
Anne M. Orcutt
STRUCK LOVE ACEDO, PLC

Nicholas H. Rasmussen
McCORMICK BARSTOW, LLP

*Attorneys for Intervenor CoreCivic, Inc.*

- 11 -

CORECIVIC'S REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF RE INTERVENTION AND STAY
CASE NO.1:26-CV-02546-JLT-CDB