UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GOMEZ RUIZ, et al., | Case No. 1:26-cv-02546 JLT CDB |
| Plaintiffs, | ORDER GRANTING MOTION TO INTERVENE |
| v. | (Doc. 82) |
| U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| Defendant, | |
| CORECIVIC, INC., | |
| Applicant-Intervenor. | |

## I.    INTRODUCTION

Applicant CoreCivic, Inc. moves to intervene (*see* Docs. 82, 108, 135) in this civil rights action challenging conditions of confinement at U.S. Immigration and Customs Enforcement's California City Detention Facility, which CoreCivic owns and operates. (*See generally* Doc. 15, First Amended Complaint (FAC).) Though Plaintiffs vigorously oppose the motion (Docs. 106 and 139), for the reasons set forth below, the Court **GRANTS** the motion.

## II.    BACKGROUND

Plaintiffs initiated this action in the Northern District of California on November 12, 2025 (Doc. 1) and filed the currently operative FAC shortly thereafter, on November 20, seeking to

1

represent a class of all persons detained at the Facility as well as a subclass of individuals with disabilities held at the Facility. (FAC, ¶¶ 254–55.) Plaintiffs named ICE and various related federal entities and officials as defendants. (*See generally* FAC.) Plaintiffs' First Claim alleges that Defendants are violating class members' Fifth Amendment due process rights because conditions at California City are similar or more restrictive than those imposed in a prison environment and therefore are improperly punitive, including by limiting outdoor recreation time and visits from loved ones and imposing overly restrictive security policies. (*See* FAC, ¶¶ 269–76.) The Second Claim alleges that Defendants are depriving class members of adequate and necessary health care in violation of their Fifth Amendment rights, including by systemically failing to respond to urgent and non-emergent medical and mental health care needs and failing to ensure continuity of prescription medications. (*Id*., ¶ 277–78.) The Third Claim alleges Defendants are violating class members' Fifth Amendment right to hire and retain counsel of their own choosing by unreasonably restricting Plaintiffs and the putative Class members from retaining, consulting, and communicating with counsel. (*Id*., ¶ 279–81.) The Fourth Claim concerns a putative subclass of detainees at California City who have disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 794. (*Id*., ¶¶ 255, 292–93.)

CoreCivic owns the Facility and currently operates it under an agreement with ICE. (FAC, ¶ 3, 20; Doc. 45-1, Jan. 15, 2026 Corrected Declaration of Christopher Chestnut, ¶ 3.) The FAC alleges "CoreCivic facility administration, staff, and other personnel are agents of Defendant ICE," (FAC, ¶ 20), and CoreCivic is specifically referenced numerous times in the Complaint in that capacity. (*Id*., ¶¶ 3, 20, 25, 26, 27, 28, 29, 30, 32, 33 & nn. 2, 9 16.)

On December 1, 2025, Plaintiffs moved for class certification and a preliminary injunction. (Docs 21, 22.) On December 16, Plaintiffs also moved for a temporary restraining order related to the provision of medical care to two of the named Plaintiffs. (Doc. 27.)

On December 22, 2025, Judge Maxine M. Chesney of the Northern District of California, approved a stipulated temporary restraining order addressing the urgent medical needs of certain named Plaintiffs and set a schedule for the parties to brief the motions for preliminary injunction and class certification. (Doc. 36; *see also* Docs. 21, 22.) On January 2, 2026, Federal Defendants

filed comprehensive oppositions to those motions. (Docs. 38, 39.) In addition, also on January 2, Federal Defendants filed a motion to transfer the case to this District. (Doc. 37). Judge Chesney set all then-pending motions for hearing on February 6, 2026. (*See* Doc. 44.) On that date, Judge Chesney held a lengthy hearing at which she indicated she would transfer the case to this District but nonetheless addressed interim injunctive relief. (*See generally* Doc. 75, 2/5/26 Hng. Tr.)

On February 10, 2026, Judge Chesney issued a written order granting in part Plaintiffs' motions for preliminary injunction and class certification, (Doc. 72), and on March 27, 2026, issued a separate memorandum decision providing additional reasoning in support of the February 10 Order. (Docs. 72, 111 (collectively, "PI Order").) Generally, the PI Order requires Defendants to: "(1) ensure constitutionally adequate medical care ([Doc. 72,] ¶ 1)[1]; (2) provide access to an independent, third-party 'External Monitor' for a period of 120 days (*id*. ¶ 2); (3) ensure that detained individuals have timely and confidential access to attorneys through in-person, contact legal visits and calls (*id*. ¶ 3)[2]; and (4) provide free temperature-appropriate clothing and at least one hour of outdoor recreation time per day (*id*. ¶ 4)." (Doc. 111 at 4.) In addition, on March 30, 2026, Judge Chesney entered an order appointing Muthusamy Anandkumar as an external monitor regarding compliance with the Court's preliminary injunction. (Doc. 112.)

Meanwhile, on March 3, 2023, CoreCivic moved to intervene in this action for the limited purposes of (1) appealing the February 10, March 27, and March 30, 2026 Orders and (2) seeking a

---

[1] More specifically regarding medical care, the Court directed Federal Defendants to ensure: adequate health care staffing; comprehensive, documented medical intake screening, performed by a "qualified medical provider" within 12 hours of a person's arrival; thorough Initial Appraisals performed timely by a primary care provider; timely approval and access to medical specialists; timely and responsive emergency services; continuity of medical care upon intake and thereafter, including timely completion of active medical orders, access to scheduled provider appointments, and consistent provision of medication; timely access to prescribed medications; and a responsive "sick call" request system. (Doc. 72 at 3.)

[2] Regarding access to counsel, the Court ordered Federal Defendants to ensure: in-person legal visitation seven days per week from 8:00 a.m. to 8:00 p.m., in private and confidential settings, with each legal visit lasting up to three hours in length; contact attorney visits that do not take place through a pane of glass, absent documented security grounds to deny such contact; scheduling of confidential legal calls with legal representatives of up to 90 minutes each, to take place within two business days of a request; and provision of written information regarding protocols for attorney-client communication to all individuals detained at California City. (Doc. 72 at 4.)

stay of those orders pending appeal. (Doc. 82 at 2; Doc. 135 at 7.) CoreCivic maintains it is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a) and alternatively requests permissive intervention under Rule 24(b). (*See generally* Docs. 82, 135.)

On March 5, CoreCivic noticed its appeal. (Doc. 91, filed Mar. 6, 2026.) On April 13, Federal Defendants also noticed an appeal from the same three orders. (Doc. 127.) A few days later, in a status report filed in this Court on April 17, Federal Defendants clarified that its Notice of Appeal was "protective" while the appropriate division of the Department of Justice continued to consider whether to pursue the appeal. (Doc. 132 at 1–2.) Given those developments, the Court permitted supplemental briefing. (*See* Doc. 133.) For the reasons set forth below, the motion to intervene is **GRANTED**.[3]

## III.    INTERVENTION AS OF RIGHT

The Ninth Circuit has adopted a four-part test for determining whether an applicant can intervene as of right pursuant to Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*) (internal citation and quotation omitted). A proposed intervenor bears the burden of meeting these elements. *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016). The requirements for intervention are broadly interpreted in favor of intervention. *Id.*, citing *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).)

### A.    Timeliness

To determine whether a motion for intervention as of right is timely, a court should consider "the totality of circumstances facing the would-be intervenor, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *W. Watersheds Project*

---

[3] In the interest of expedience, the Court will issue a separate order on CoreCivic's motion to stay.

*v. Haaland*, 22 F.4th 828, 835–36 (9th Cir. 2022) (citing *Smith*, 830 F.3d at 854). "When evaluating these factors, courts should be mindful that 'the crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id*. "Timeliness is a flexible concept; its determination is left to the district court's discretion." *Alisal Water*, 370 F.3d at 921.

In analyzing timeliness, a court must also be "mindful of the balance of policies underlying intervention." *Kalbers v. U.S. Dep't of Just*., 22 F.4th 816, 823 (9th Cir. 2021).

> On the one hand, we "discourage premature intervention" that unnecessarily "squander[s] scarce judicial resources and increase[s] litigation costs." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376–77 (5th Cir. 2001). On the other hand, we favor intervention because it "serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv*., 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (citation omitted). Accordingly, while we construe the intervention motions that we receive liberally, *id*., we do not require hasty intervention. *See also John Doe No. 1*, 256 F.3d at 375 ("[T]imeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner." (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994))); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (same); [*United States v.*] *City of Chicago*, 870 F.2d [1256, 1263 (7th Cir. 1989)] ("The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." (citation omitted)).

*Kalbers*, 22 F.3d at 823.

CoreCivic seems to acknowledge that the timeliness analysis may be distinct for its two requests: (1) permission to intervene to appeal the preliminary injunction order and (2) permission to intervene to pursue a motion to stay operation of that order in this Court. (*See* Doc. 82 at 12); *cf. W. Watersheds*, 22 F.4th at 837 ("whether [applicant] should be permitted to intervene in a new, future stage of the litigation involves a different set of considerations than whether it should be permitted to participate in the Phase One appeal"). Thus, in an abundance of caution, the Court will evaluate the requests separately.

///

///

5

### 1.    Timeliness of Intervention to file Appeal

#### a.    *Stage of the Proceedings*

CoreCivic argues that its request to intervene to file an appeal is timely because it was filed by the respective deadline(s) for filing an appeal from the February 10, 2025 Order. (Doc. 82 at 12.)[4] Generally, "[a] court will consider a post-judgment motion to intervene to be timely if filed within the time limitations for filing an appeal." *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 719 (9th Cir. 1994) (discussing this rule in the context of the "stage of the proceedings" factor); *see also W. Watersheds*, 22 F.4th at 836 (same); *U.S. ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992) (same).[5] Though the Court can identify no decision that has applied this rule to the exact circumstances presented here, namely an appeal from a preliminary injunction order, the Court sees no reason why an interlocutory appeal from an injunction permitted by 28 U.S.C. §1292(a)(1) would be treated differently than any other appellate process for purposes of this line of authority. However, as Plaintiffs point out, this "general" rule suffices only to satisfy the "stage of the proceeding" factor and does not obviate the need to consider all three timeliness factors. (*See* Doc. 106 at 18, citing *Killingsworth*, 25 F.3d at 715 (assessing prejudice and whether the applicant for intervention offered an acceptable reason for the delay in filing the motion, even though applicant moved to intervene within the time allotted for filing an appeal)).)

---

[4] Federal Rule of Civil Procedure 23(f) provides a 45-day period to file a petition for permission to appeal provisional class certification. Federal Rule of Appellate Procedure 4(a)(1)(B) provides 60 days to take an appeal as of right from an order if one of the parties is the United States, which includes appeals from preliminary injunction orders. 28 U.S.C. § 1292(a)(1).

[5] CoreCivic attempts to resist consideration of all three timeliness factors in relation to their request to intervene for purposes of filing an appeal, citing *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir. 1997). But *Alaska* concerned a party who sought to intervene to bring a post-judgment appeal from <u>denial</u> of class certification. *Id*. The Supreme Court addressed this unique situation in *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394–95 (1977), finding that a putative class member who was not a named plaintiff could intervene under such circumstances so long as they did so promptly after the entry of final judgment made the adverse class determination appealable. The Supreme Court extensively discussed the fact that the applicant for intervention was a putative class member. *Id*. at 394 ("United can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal on behalf of putative class members was brought by one of their own, rather than by one of the original named plaintiffs."). The situation presented in *Alaska* and *United Airlines* is distinct from the present posture.

b.      *Prejudice/Reason for and Length of Delay*

"Under this factor, the only relevant prejudice is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *W. Watersheds*, 22 F.4th at 838 (internal quotations and citations omitted). "Stated differently, prejudice does not arise merely from the fact that including another party in the case might make resolution more difficult." *Id*.; *see also Brown v. Google LLC*, 172 F.4th 1128, 1135 (9th Cir. 2026).

Regarding CoreCivic's request to intervene for purposes of pursuing an appeal, it is difficult to discern how CoreCivic could reasonably have known before early February 2026 that Federal Defendants might not pursue an immediate, interlocutory appeal of the preliminary injunction order. Plaintiffs suggest that the possibility of divergence should have become apparent after the Court issued its TRO order on December 22, 2025, (*see* Doc. 106 at 22; *see also* Doc. 36), because Federal Defendants did not appeal or move to stay that order. This argument is not convincing because the more reasonable interpretation of this procedural history is that the very limited <u>stipulated</u> TRO ordered relief that no party <u>or CoreCivic</u> had any reason to object to then or now.[6] The Court is also at a loss to identify any prejudice that could have flowed from the three week delay between February 6 and CoreCivic's March 3, 2026 intervention motion.

As for providing an explanation for the three-week delay, CoreCivic represents that it urged Federal Defendants to appeal the preliminary injunction and to seek an emergency stay pending that appeal. (Doc. 135 at 14.) This is a reasonable explanation for the brief delay between the issuance of injunctive relief and the motion to intervene. CoreCivic's request to intervene for purposes of appeal is timely.

2.      <u>Timeliness of Intervention to Pursue Motion to Stay in this Court</u>

The timeliness analysis is not materially different when applied to CoreCivic's related request to intervene for purposes of pursuing a motion to stay in this Court, though it is slightly more layered.

---

[6] The TRO ordered that one named Plaintiff receive a comprehensive evaluation from a cardiologist; that another receive a comprehensive assessment from a urologist, including a biopsy as necessary; and that both receive timely follow up care. (Doc. 36.)

a.   *Stage of the Proceedings*[7]

The "stage of proceeding factor uses a nuanced, pragmatic approach to examine whether the district court has substantively—and substantially—engaged the issues in the case." *Kalbers*, 22 F.4th at 826 (internal quotation and citation omitted). "[S]ubstance prevails over form: Neither the formal stage of the litigation (e.g., the pretrial stage), nor the length of time that has passed since a suit was filed is dispositive." *Id.* (internal quotation and citation omitted).

Courts have found this factor weighs in <u>favor</u> of intervention where only preliminary injunctive proceedings have taken place. *See SFR Invs. Pool 1, LLC v. Newrez LLC*, No. 2:22-CV-00626-GMN-EJY, 2023 WL 3341918, at *2 (D. Nev. May 10, 2023) (collecting cases in which this factor was deemed satisfied, including several cases where the Court had resolved both a motion for preliminary injunction and a motion to dismiss). The cases cited by Plaintiffs (Doc. 106 at 17) are not to the contrary. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1303 (9th Cir. 1997) (where 27 months had passed since complaint was filed, the court had issued a TRO and PI, defendants appealed, four other parties had already intervened, the court provisionally certified a class and denied a motion to dismiss, defendants had answered, the court partially granted a motion for summary judgment, and discovery was well under way); *Roman v. Mayorkas*, No. ED CV 20-00768 TJH, 2021 WL 4621947, at *2 (C.D. Cal. July 7, 2021) (where 15 months had passed since opening of case, the court had entered a PI, the government appealed, the Ninth Circuit stayed the appeal but six months later affirmed and lifted the stay, and then the trial court entered a modified PI and then appointed a special master to monitor compliance).

In addition, Plaintiffs' efforts to distinguish the cases cited by CoreCivic are not persuasive. For example, Plaintiffs suggest that *SFR Investments*, 2023 WL 3341918, is distinguishable because that court had only ruled on "preliminary motions and had not yet engaged substantively in the issues presented." (Doc. 106 at 18). Yet in *SFR Investments*, the District of Nevada issued a written decision on a preliminary injunction motion, in which the court engaged in the case at a level of detail comparable to the March 30, 2026 order issued in

---

[7] Unlike with intervention for purposes of filing an appeal, the Court has not been presented with authority suggesting it can presume that the stage of the proceedings factor is satisfied for purposes of intervening to request a <u>stay</u> pending appeal.

this case. *See SFR Invs. Pool 1, LLC v. Newrez LLC*, No. 2:22-CV-00626-GMN-EJY, 2022 WL 2788411, at *3 (D. Nev. July 15, 2022). When addressing a motion to intervene filed many months later, the *SFR Investments* court concluded it had not "substantively and substantially engaged the issues in the case" and thus that the stage of the proceedings factor weighed in favor of intervention. *SFR Invs.*, 2023 WL 3341918, at *2.

On the one hand, CoreCivic moved to intervene approximately four months after the case was filed. It cannot be denied that the existing parties expended substantial resources briefing the preliminary injunction, class certification, and transfer motions prior to CoreCivic's motion to intervene and that the Court undoubtedly engaged in the substance of the case at least to some extent when it ruled on those motions. Yet that engagement relied on a preliminary record and focused largely on a handful of expert declarations that sampled conditions on the ground and opined as to the existence of systematic constitutional violations. Applying the "pragmatic approach" required by the Ninth Circuit, the Court concludes proceedings remained at a relatively early stage when CoreCivic sought intervention. For all these reasons, the Court concludes that this factor weighs at least slightly in favor of intervention.

b.      <em>Prejudice/Reasons for Delay</em>

Plaintiffs argue that allowing CoreCivic to intervene at this stage as requested (i.e., so that they may move to stay the preliminary injunction) will significantly prejudice Plaintiffs because they will "lose the time and resources they expended in securing preliminary relief and would face the prospect of having to relitigate . . . the preliminary injunction motion that CoreCivic now seeks to stay and overturn." (Doc. 106 at 16 (internal quotation and citation omitted); *see also id*. at 8 ("[Allowing] CoreCivic to intervene now for the sole purpose of upending the preliminary injunction would severely prejudice Plaintiffs by allowing a non-party to ambush Plaintiffs with arguments that it could and should have proffered before Plaintiffs secured preliminary relief with potentially life saving effects."); *id*. at 17 (suggesting that by seeking to intervene to stay the preliminary injunction orders, CoreCivic seeks to "relitigate the preliminary injunction and stall urgently needed relief, placing Plaintiffs' health and safety at further risk.").)

Plaintiffs are generally correct that prejudice for the purposes of intervention may exist

9

where a party seeks to re-open decided issues, such as whether injunctive relief is appropriate and/or the scope of that relief. *See, e.g.*, *EEOC v. Ga.-Pac. Corrugated LLC*, 2008 WL 11388687, at \*7 (N.D. Cal. Apr. 9, 2008) ("'Prejudice' in the context of a motion to intervene may exist[] where intervention would raise new issues, re-open decided issues, unnecessarily prolong litigation, threaten settlement, or delay remedies."); *Ctr. for Investigative Reporting v. U.S. Dep't of Labor*, 2020 WL 554001, at \*2 (N.D. Cal. Feb. 4, 2020) ("The Court is inclined to deny the motion insofar as it seeks intervention to relitigate or reconsider matters decided . . . ."). But this forgets that in this context "prejudice" is relative to when CoreCivic should have become aware that its interests would no longer be protected by the existing parties. *See W. Watersheds*, 22 F.4th at 838; *see also Kalbers*, 22 F.4th at 825, ("[P]rejudice must be connected in some way to the timing of the intervention motion.").

Indeed, CoreCivic should have been aware of the <u>nature of the issues</u> and the <u>potential forms of injunctive relief that might be awarded</u> several months ago, given that the preliminary injunction and class certification motions were extensively briefed beginning on December 1, 2025. (*See, e.g.*, Docs. 21, 22, 38, 39, 40, 46, 48, 49, 51.) But that is not the question.[8] Federal Defendants opposed those motions on January 2, 2026, attaching voluminous exhibits, including declarations from Christopher Chestnut, the Warden of California City, (Doc. 38-1), and Dr. Susan Tiona, CoreCivic's Chief Medical Officer. (Doc. 38-2.) Judge Chesney held a lengthy hearing on both motions, as well as the motion to transfer, on February 6, 2026. (*See* Doc. 75.) At that hearing, Federal Defendants opposed the issuance of the preliminary injunction, arguing,

---

[8] Plaintiffs appear to be attempting to blur this rule by quoting *Brown* (Doc. 139 at 14), where the Ninth Circuit reasoned that "the appropriate time to move for intervention would have been when they were on notice that their interests *might* be adversely affected by the outcome of the litigation—not when they could be certain of harm." *Brown*, 172 F.4th at 1137. But that quotation is taken out of context. Elsewhere in *Brown*, as Plaintiffs' own brief acknowledges (Doc. 139 at 14), the Ninth Circuit reiterated that the key point in time for the prejudice analysis is when the proposed intervenors should have been aware that its interests <u>diverged</u> from the existing parties. *Brown*, 172 F.4th at 1137. In *Brown* the Ninth Circuit performed alternative timeliness analyses, causing the two questions (the moment of awareness that interests might be impacted at all and the moment of awareness that the existing parties might not protect those interests) to overlap in ways that are not material here. *See id*. at 1137–38. Crucially, nowhere did the Ninth Circuit untether timeliness from the moment the intervenor applicant should have been aware that its interests <u>diverged</u> from the existing parties. To find otherwise would run afoul of *Kalbers*' warning to not apply intervention rules in ways that would encourage premature intervention. *See Kalbers*, 22 F.3d at 823.

among other things, that Plaintiffs had not shown systemic failures, ongoing irreparable harm, or the propriety of the specific relief requested. (*Id*., *passim*.) Over those objections, the Court entered the February 10, 2026 Order setting forth the specific terms of the preliminary injunction, (Doc. 72), and then followed up with the issuance of a memorandum opinion. (Doc. 111.)

Given these facts, as was the case with the decision to intervene for purposes of taking an appeal, the Court concludes that CoreCivic was not on notice that its interests regarding the scope of any injunctive relief imposed might materially diverge from Federal Defendants' until shortly after the February 6, 2006 hearing, at the earliest. CoreCivic's motion to intervene was filed only a few weeks later, on March 3, 2026. (Doc. 82.) The harm of which Plaintiffs object (i.e., the risk of walking back the PI Order) does not flow from this brief, three-week delay. As the Ninth Circuit has noted, in evaluating timeliness, the Court must be "mindful of the balance of policies underlying intervention." *Kalbers*, F.4th at 823. Plaintiffs position—that CoreCivic had to intervene as soon as it had knowledge of the kinds of injunctive remedies the Court might impose—runs contrary to the instruction of *Kalbers* to "discourage premature intervention" which "squanders scarce judicial resources and increases litigation costs." *Id*. (internal citation and quotation omitted).

As for explaining the three week-delay, as mentioned above, CoreCivic reasonably explains that it urged Federal Defendants to seek an emergency stay pending appeal. (Doc. 135 at 14.) Under the totality of the circumstances, CoreCivic's motion to intervene for purposes of moving to stay the PI Order is also timely.

**B.      Significantly Protectable Interest/Impairment of that Interest**

"The requirement of a significantly protectable interest is generally satisfied when the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003) (internal quotation and citation omitted). "[W]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (internal quotation and citation omitted). A proposed intervenor's interest has

a "relationship" with the pending action "only if the resolution of the plaintiff's claims actually will affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998); *see also Wilderness*, 630 F.3d at 1179 ("[A] prospective intervenor has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."). Nonetheless, "intervention as of right does not require an absolute certainty that a party's interest will be impaired." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011); *Woods v. Cnty. of Los Angeles*, No. 2:20-CV-04474 AB (MAAx), 2022 WL 19829548, at *6 (C.D. Cal. Mar. 14, 2022). *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. H & S Elec. Inc.*, No. CV 19-05347 DDP (EX), 2020 WL 410176, at *2 (C.D. Cal. Jan. 23, 2020) (discussing but ultimately dismissing possible conflict between "actually will affect" language in Donnelly and other authority requiring lesser certainty).

As an initial matter, Plaintiffs suggest that this element cannot be met because the PI Order is "aimed at remedying Defendants' constitutional violations." (Doc. 106 at 13 ("CoreCivic seems to suggest that it has a contractual interest in not being bound by the constitution or by court order—or that it cannot comply with its contract terms if it is so bound.").) But Plaintiffs cite no authority for the proposition that simply because a lawsuit seeks to vindicate constitutional rights, an impacted person or entity has no interest in litigating whether the constitutional provision has been violated in specific circumstances and/or the scope of injunctive relief awarded to remedy any such violation. *San Francisco Baykeeper v. U.S. Fish & Wildlife Service*, 2021 WL 3426961 (N.D. Cal. Aug. 5, 2021), cited by Plaintiffs (*see* Doc. 139 at 17–18), is not to the contrary. In *Baykeeper*, the plaintiff sought to force a federal agency to issue a proposed rule listing a particular fish under the Endangered Species Act. *Id.* at *7. The intervenor applicant claimed a protectable contract-based interest in delivery of water from the Reclamation project that allegedly threatened that fish species. *Id*. The district court found this claimed interest insufficient because, among other things, the proposed relief—an order to issue a *proposed* rule— would merely have initiated a separate administrative process in which the intervenor would have had additional opportunities to participate. *Id*.

Not so here. Among other things, CoreCivic argues that the PI Order requires it to

undertake, at considerable expense, actions that are not otherwise required by applicable detention standards, such as the 2025 National Detention Standards, standards promulgated by the National Commission on Correctional Health Care, and the American Correctional Association. (*See* Doc. 86 at 26–27; Doc. 82 at 16.) For example, Paragraph 1(b) of the PI Order requires a "comprehensive, documented medical intake screening, performed by a qualified medical provider within 12 hours of a person's arrival." (Doc. 72, ¶ 1(b).) As CoreCivic points out, "qualified medical provider" is not defined in the PI Order, but "provider" in this context may be interpreted to mean a Nurse Practitioner, Physician's Assistant, Physician, or a similar level of license, and does not include a Registered Nurse or Licensed Vocational Nurse. (*See* Doc. 82-1, March 2, 2026 Declaration of Christopher Chestnut, ¶¶ 34, 39.) In contrast, pre-existing correctional standards appear to permit such initial screenings to be provided by a broader range of personnel, including "a specially trained detention officer." (*Id*., ¶ 35.) Depending on the level of credential/training required by the Court's PI Order, CoreCivic estimates compliance will cost an additional $901,250 per year. (*Id*., ¶ 47.)

Because it is possible to imagine a situation where such costs would automatically be passed on to the contracting agency, thus minimizing or potentially eliminating CoreCivic's asserted economic interest, the Court requested that CoreCivic reveal pertinent provisions from its contract with ICE. (Doc. 141.) The preset record[9] now indicates the agreement to be an "indefinite delivery indefinite quantity (IDIQ) contract" pursuant to which CoreCivic is compensated a fixed amount for the "Facility Operating Charge," and a per diem rate based on the number of detainees. (Doc. 143-2 at 6–7.) The contract further provides that CoreCivic "shall furnish all personnel, management, equipment, supplies, training, certification, accreditation, and

---

[9] Plaintiffs protested in their initial opposition brief that CoreCivic failed to disclose its contract with ICE and thus the Court cannot evaluate CoreCivic's contractual rights and duties. (Doc. 106 at 19.) CoreCivic's initial reply provided a link to a publicly available (albeit redacted) copy of their contract with ICE for the California City Facility. (Doc. 108 at 8, n.3.) In its opposition to CoreCivic's supplemental brief, Plaintiffs continued to object that this level of disclosure does not permit Plaintiffs or the Court to evaluate CoreCivic's contractual rights, duties, and alleged liabilities. (Doc. 139 at 18.) In reply, CoreCivic directed the Court's attention to certain additional contractual provisions available in a publicly available Freedom of Information Act disclosure. (*See* Doc. 143-2, ¶¶ 3–4.) The Court takes judicial notice of these documents for their content, *see* Fed. R. Civ. P. 702, and is satisfied that this record permits the analysis required for this motion.

services necessary for performance of all aspects of the contract," and "[u]nless explicitly stated otherwise, [CoreCivic] is responsible for all costs associated with and incurred as part of providing the services outlined in this contract." (Doc. 143-2 at 9.) The agreement also provides:

> Should a change in the applicable standards and laws identified in this contract result in a documentable financial impact on the contractor, the contractor must notify the CO within 30 calendar days of receipt of the change and **both contractor and Government will negotiate best course of action**, either 1) a waiver to the Standards or, 2) negotiate a prospective change in the bed day or other rates. Please note, any change in compensation rate will be prospective, beginning on the date the change is effective.

(*Id*. (emphasis in original))

It is not entirely clear how this contractual provision might apply here, but complete certainty is not required for intervention. At the very least, by providing for a re-negotiation process, rather than indemnification, the provisions present some degree of risk that CoreCivic will not be fully reimbursed for compliance costs incurred.[10] Under these circumstances and given that the inquiry is meant to be a "practical" one, the Court finds CoreCivic has a significant protectable interest that is related to the litigation.

"Generally, after determining that the applicant has a protectable interest, courts have 'little difficulty concluding' that the disposition of the case may affect such interest." *Jackson v. Abercrombie*, 282 F.R.D. 507, 517 (D. Haw. 2012) (quoting *Lockyer v. United States,* 450 F.3d 436, 442 (9th Cir. 2006)). Such is the case here. The interest identified above may be affected by the disposition of this case.

### C.    Adequacy of Representation

Courts consider three factors when evaluating adequacy of representation: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Western Watersheds*, 22 F.4th 840–41 (internal citation and quotation omitted). "The burden of showing inadequacy of representation is minimal and satisfied if the

---

[10] The Court expresses no position on how the contract terms should be interpreted.

14

applicant can demonstrate that representation of its interests may be inadequate." *Id.* at 840.

"When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)(internal citation omitted). "If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Id*. (internal citation omitted). Plaintiffs contend that this presumption applies here because "at the core of this litigation [ ] ICE and CoreCivic share precisely the same ultimate objective: defending their operation of California City Detention Facility." (Doc. 106 at 21–22.)

The simple fact that Federal Defendants have not yet committed to pursuing an appeal from the PI Order or a motion to stay is, from a practical perspective, dispositive on this element. *See Fresno Cnty. v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) (where applicant for intervention was positioned to make similar arguments as government agency at the trial court level, but the agency did not pursue those arguments on appeal that "unwillingness indicates that the [agency] does not represent [the applicant] fully."). On the present record, this element must be resolved in CoreCivic's favor.

In sum, CoreCivic has satisfied all elements required for the limited intervention as of right they seek. Given the above result, the Court declines to address whether CoreCivic's alternative request for permissive intervention.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above:

1.    CoreCivic's motion to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) (Doc. 82) is **GRANTED.**

2.    CoreCivic may intervene as a defendant for the limited purpose of appealing the February 10, 2026 preliminary class certification and preliminary injunction order and to pursue a motion to stay that order pending the appeal.

///

///

///

3.      This order is without prejudice to reconsideration should Federal Defendants clarify their position on appeal and/or the request for a stay.

IT IS SO ORDERED.

Dated:    **May 13, 2026**

_____
UNITED STATES DISTRICT JUDGE

16